UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | | |
|---|---|---|
| EDWARD W. TOVEY, | ) | CASE NO.  1:12-cv-0448 |
| | ) | |
| Plaintiff, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| NIKE, INC., *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | Doc. No. 11 |
| | ) | |

This case is before the magistrate judge on referral.  Before the court is the motion

of defendants Nike, Inc. ("Nike") and Wieden + Kennedy ("W+K") to dismiss the case

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

granted.  Doc. No. 11.  Plaintiff, Edward W. Tovey ("Tovey"), opposes defendants' motion.

Doc. No. 12.  For the reasons given below, defendants' motion for summary judgment

should be resolved as follows:  (1) **GRANTED** as to Tovey's first (trademark counterfeiting)

and third (reverse confusion) grounds for relief; (2) **GRANTED OR** Tovey should be given

an opportunity to **AMEND** with respect to his fifth (contributory trademark infringement),

sixth (vicarious trademark infringement), and tenth (tortious interference with business relationships) causes of action; and (3) **DENIED** as Tovey's second (trademark infringement), fourth (false designation of origin and unfair competition), seventh (common law unfair competition), eighth (common law trademark infringement), and ninth (a violation of the Ohio Deceptive Trade Practices Act ("ODTPA")) grounds for relief.

## I.  Background

The court views the facts, as it must, in the light most favorable to the plaintiff. Tovey pleads, or does not deny, the following facts.

Tovey attended Hondros College in Independence, Ohio in the fall of 2005 to fulfill course requirements prior to taking the Ohio Real Estate Salesperson test.  He attended class with Savannah Brinson ("Brinson"), girlfriend of professional basketball player LeBron James ("James").  At the time, James had a marketing and sponsorship agreement with Nike.

Tovey conceived a line of sports clothing with the tagline, "BOOM YO" and marketed around "game changing sports moments."  Tovey envisioned a depiction of a game changing event on one side of each clothing item with the word "BOOM" on that side.  On the other side of the item would be a depiction of an athlete enjoying that event.[1]  He shared this idea with Brinson.  He hoped to reach an agreement with Brinson, James, and Nike whereby Brinson would run the sports clothing business, James would provide contacts with Nike, and Nike would pay Tovey royalties for the use of "BOOM YO" in

---

[1]  Exhibits 4, 4A, 5, and 5A, attached to the complaint, illustrate items of clothing using Tovey's "Boom Yo" marketing concept.  The illustrations show that the word "Yo!" was included on the opposite side of the clothing item from the side containing the word "Boom!"  One clothing item was marked by the words "Boom!" and "Yo!" on opposite sides of the item only, without a depiction of a sports event or an athlete celebrating that event.

marketing a line of clothing.

Tovey filed an intent-to-use trademark application for BOOM YO! with the United States Patent and Trademark Office ("PTO") on July 16, 2005.  The PTO issued the registration on March 31, 2009 as United States Trademark Reg. No. 3,600,240.  The registration for BOOM YOI covers its application to "[c]lothing, namely, t-shirts, sweatshirts, ball caps, shirts, shorts, shoes, and jackets" in International Class 25.

When Tovey completed his coursework at Hondros College, he gave Brinson his name and phone number in the hope that she would contact him if there were any interest in his BOOM YO clothing concept.  He did not hear from Brinson, James, or Nike.

On October 6, 2010, LeBron James posted the following on his Facebook page, "LeBron BOOM!  SAY BOOM -- www.youtube.com -- BOOM!  This is what epic, game-changing moments look like.  Experience them now at Nike.com."  A hyperlink to YouTube connected the page to http://www.youtube.com/watch?v=R7dMTGa4cHw, which, according to the complaint, "included videos of the new Nike advertising tag line called 'BOOM.'"  The hyperlinked page at YouTube included the text, "BOOM!  This is what epic, game-changing moments look like.  Experience them now at Nike."  Complaint at 4.  The content had been uploaded on October 1, 2010 and showed 257,522 views on October 6, 2010.

Within days, Tovey discovered television commercials for Nike products on the ESPN Network featuring game-changing moments in various sports and using the word "Boom."  According to the complaint, the commercials employed "exactly the same concept Plaintiff had discussed with Brinson."  *Id.*.  Friends and associates of Tovey who had known of his "BOOM YO!" idea called, asking "if Plaintiff had made an agreement on the "BOOM" concept with Nike."  *Id.*

3

Soon, additional ads appeared in other media using the "Boom -- game-changing moments" campaign.  The advertisements featured various sports stars and included an exploration of what a "Boom moment" was.  The complaint quotes the Nike website as stating, "WHAT'S YOUR BOOM MOMENT?  A BOOM moment is a game changing play. It's a bottom of the ninth grand slam.  It's a fourth quarter pick six.  Make yours known . . . ." *Id.*

According to Tovey, Nike's "Boom" advertising campaign was developed by W+K. The complaint quotes the W+K website as declaring the following:

> "Boom" celebrates the epic, game-changing moments in sport.  Moments that are so over the top that all we can say is "Boom." You've probably heard it before and even used it yourself.  The word "boom" has become part of the fabric of popular sports culture.  It was time to have some fun.  Nike's Boom campaign features a bevy of Nike elite athletes and coaches -- Adrian Peterson, Robinson Cano, Serena Williams, Hope Solo, Tim Tebow, Ndamukong Suh, Manny Pacquiao, Eric Koston, Max Seibald, Bo Jackson and Nick Saban -- along with high school football and volleyball athletes.

Complaint at 6.  The complaint also quotes an article in *Adweek Magazine*, September 29, 2010, for its description of the W+K campaign:

> Nike has released a new series of ads from Wiedon + Kennedy with the simple theme of "Boom!"  The spots draw attention to high-impact moments in sports and, presumably, Nike's role in facilitating them.  Nike's new commercial ad campaign is based on the them of "Boom."  As the series of commercials below demonstrates, a "boom" can come from a hard hit, a knockout punch, a spike, a windmill dunk whatever.

Complaint at 6.  According to Tovey, W+K employees Ryan O'Rourke, Alberto Ponte, Karl Lieberman, James Moslander, Jen Dennis, Ryan Johnson, Rob Archibald, Jason White, Courtney Nelson, Mark Fitzloff, Susan Hoffman, and Ben Grylewicz developed the ad campaign.

Nike also used the word "Boom" on clothing, such as t-shirts, long-sleeved shirts,

4

hoodies, and gloves, and as a smartphone application.  In these uses, the work "Boom" appears in various formats, such as behind a flame above Manny Pacquiao's initials, behind the liberty bell on a Phillies' shirt, arranged around two crossed bats on a Texas Rangers t-shirt, in yellow lettering on a hoodie, behind two opposing helmets below the Tostitos' logo on a Stanford-Virginia Tech bowl t-shirt, and in split block lettering above "AMPLIFY YOUR TRAINING" on an advertisement for a smartphone application.  *See* Complaint, Exhs. 28-35; Defendants' motion at 4.

Tovey has been selling a line of clothing under the "BOOM YO" trademark for more than six years.  According to the complaint, he has been selling the clothing to the same audience targeted by the recent Nike "Boom" ad campaign.  Consequently, Tovey alleges market confusion created by Nike's ad campaign.  He also alleges that Nike and W+K have knowingly exploited and counterfeited Tovey's trademark without permission.

Tovey filed a complaint against Nike, W+K, and unnamed companies and John Does on February 24, 2012.  Tovey's complaint asserts thirteen causes of action, including trademark counterfeiting, 15 U.S.C. § 1114; trademark infringement, 15 U.S.C. § 1114; reverse confusion, 15 U.S.C. § 1114; false designation of origin and unfair competition, 15 U.S.C. § 1125(a); contributory trademark infringement, 15 U.S.C. § 1114; vicarious trademark infringement, 15 U.S.C. § 1114; common law unfair competition; common law trademark infringement; a violation of the Ohio Deceptive Trade Practices ACT ("ODTPA"), Ohio Rev. Code § 4165.03 *et seq.*; tortious interference with prospective business relationships/common law civil conspiracy; and unjust enrichment.  Tovey seeks damages, injunctive relief, and declaratory relief.  Tovey appends to his complaint 35 exhibits, including documents related to registration and publication of his "Boom Yo!" trademark,

5

depictions of clothing using the "Boom Yo!" trademark, descriptions and depictions of Nike's "Boom!" ad campaign, and depictions of Nike's clothing and other products adorned with the word "Boom!."  Nike and W+K deny liability as to all of Tovey's claims and move to dismiss all of his claims, except the claim for declaratory judgment, pursuant to R. 12(b)(6).  Tovey opposes Nike's and W+K's motion.

## II.  Rule 12(b)(6) Motions to Dismiss

In deciding a motion to dismiss under R. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic Corp. v.*] *Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S. Ct. 1955.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.,* at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.,* at 570, 127 S. Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.,* at 556, 127 S. Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).  According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to

6

render the claim *plausible.*"  *Weisbarth*, 499 F.3d at 541 (quoting *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief."  *Weisbarth*, 499 F.3d at 542.  A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Finally, a well-pleaded complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Documents referenced in the pleadings and central to plaintiff's claims, matters of which a court may properly take notice, public documents, and letter decisions of government agencies may be appended to a motion to dismiss.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007).  Otherwise, if a party appends matters outside the pleadings to a motion to dismiss and the court considers that material, the motion must be treated as a motion for summary judgment made pursuant to Fed. R. Civ. P. 56.  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009).

### IV.  Tovey's Federal Claims

Tovey's federal claims include trademark counterfeiting, trademark infringement, reverse confusion, contributory trademark infringement, and vicarious trademark infringement pursuant to 15 U.S.C. § 1114 ("§ 1114"); false designation of origin and unfair competition pursuant to 15 U.S.C. § 1125(a); and a claim for a declaratory judgment, presumably pursuant to 28 U.S.C. § 2201(a).  Defendant moves to dismiss all Tovey's federal claims except his claim for declaratory judgment.

7

A.      *Trademark counterfeiting*

Tovey's first ground for relief alleges that Nike's use of "Boom" in its advertising and on its clothing is a counterfeit of Tovey's trademarked phrase, "Boom Yo," in violation of § 1114 of the Lanham Act.  Nike denies that its use of "Boom" is a counterfeit of Tovey's trademark.

A trademark is "any word, name, symbol, or device ... used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.  The Lanham Act provides civil liability for anyone who, without the consent of a trademark owner, shall "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).  When a plaintiff alleges that a defendant has counterfeited plaintiff's mark, the plaintiff must show that (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as 15 U.S.C. § 1116 defines the term "counterfeit."  15 U.S.C. § 1117(b); *see also Laukus v. Rio Brands, Inc.*, 2010 WL 3190738 (6th Cir. Aug. 11, 2010).

The Lanham Act states that a "counterfeit" mark is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.  Section 1116 defines "counterfeit mark" as "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom

8

relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i).

In a joint statement, Congress stated the following regarding the similarity necessary for a mark to be regarded as a counterfeit: "'Prastimol' might be used as the mark for a medication that is the functional equivalent of a product sold under the trademark 'Mostimol.' Whether or not this sort of imitation violates the Lanham Act or other provisions of law, it does not constitute use of a 'counterfeit mark' for purposes of this bill." *Colgate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) (quoting 130 Cong. Rec. H12076, at H12078 (Daily Ed. Oct. 10, 1983)). Thus, in a case involving an imported brand of Chinese toothpaste, a court found that "Colddate" toothpaste packaged using the same red and white colors as the trademarked Colgate brand on a package of similar design was not a counterfeit of Colgate, since the average consumer would find the two names were very similar but not "substantially indistinguishable." *Colgate-Palmolive*, 486 F. Supp. 2d at 289-90.

In the present case, Tovey does not allege that Nike's use of "Boom" mimics a design or coloration idiosyncratic to Tovey's use of "Boom Yo." Thus, the question is whether the phrases themselves are "substantially indistinguishable" to the average consumer irrespective of their style of use. As a matter of law, they are not. The two phrases are undoubtedly similar. Nevertheless, one is clearly a single word and the other two words. Further, Tovey's use of "Boom Yo" had no particular idiosyncratic design or coloring. Thus, the average consumer would not find them to be "substantially indistinguishable" within the meaning of the Lanham Act. Consequently, Tovey fails to state a plausible claim for counterfeiting pursuant to the Lanham Act. For this reason, defendants' motion to dismiss should be granted with respect to Tovey's first ground for

9

relief, trademark counterfeiting.

B.    *Trademark infringement*

Tovey's second ground for relief alleges trademark infringement in violation of §

1114.  "To state a claim for trademark infringement under the Lanham Act, a plaintiff must

allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used

the mark in commerce; and (3) the use was likely to cause confusion."  *Hensley Mfg. v.

ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  Nike does not deny that Tovey owns the

"Boom Yo" trademark.  Nike alleges, however, that its use of "Boom" was not a use of

Tovey's "Boom Yo" mark and denies that its use of "Boom" was likely to cause confusion

with Tovey's trademarked goods.  Nike also argues that its use of "Boom" fell within the

rubric of "fair use."

1.    *Colorable use of Tovey's trademark*

As already described, the Lanham Act prohibits the use in commerce of any

"colorable imitation of a registered mark in connection with the sale . . . or advertising of

any goods or services . . . ."  15 U.S.C. § 1114(1)(a).  A "colorable imitation" is "any mark

which so resembles a registered mark as to be likely to cause confusion or mistake or to

deceive."  15 U.S.C. § 1127.  A consumer must exercise careful inspection  to distinguish

a colorable imitation from a genuine mark, rather than the "ordinary attention" which

enables a consumer "at once to discriminate the one from the other."  *McLean v. Fleming,*

96 U.S. 245, 255 (1877).  In determining whether a defendant uses a "colorable imitation"

of a trademark, "the test is 'whether the alleged infringing trade-mark or label, taken as a

whole, so far resembles the other mark or label as to be likely to be mistaken for it by the

casual or unwary purchaser.'"  *Coca-Cola Co. v. Carlisle Bottling Works*, 43 F.2d 119, 120

(6th Cir. 1930) (quoting *Western Oil Ref. Co. v. Jones*, 27 F.2d 205, 206 (6th Cir. 1928)).

In the present case, Tovey cites a number of uses of "Boom," both in advertising and on clothing.  Regardless of whether Tovey alleges sufficient facts to state a plausible claim for relief on the basis of the advertising described in the complaint, he does allege sufficient facts to state a plausible claim for relief on the basis of Nike's use of "Boom" on the clothing it sells.  Significantly, Tovey uses "Boom" on the front side of his clothing items and "Yo" on the back side.  Neither party alleges that Tovey's use of "Boom Yo" on clothing is uniformly characterized by a particular style of lettering, colors, or other stylistic markers that distinguish it.  Thus, it is plausible that Nike's various uses of "Boom" on the front of the clothing it sells creates the possibility of confusion in a consumer exercising ordinary attention when buying sports clothing.  Without any stylistic markers to distinguish Tovey's use of "Boom" from Nike's and without examining the back of the clothing, it is plausible that an unwary consumer might mistake Nike's goods for Tovey's.[2]  Consequently, Tovey alleges sufficient facts to state a claim that Nike used a colorable imitation of his trademark in commerce.

*2.      Likelihood of consumer confusion*

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin

---

[2] Whether Nike's use of its "swoosh" mark on its clothing serves to distinguish Nike's goods from Tovey's to an average consumer is a question of fact best left to a jury.  It should be noted, however, that Tovey argues the use of both "Boom" and the "swoosh" on Nike's clothing gives consumers the impression that Nike is authorized to use Tovey's trademark.  This allegation, if proved, would constitute infringement by confusion of sponsorship.  *See Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987).

of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir. 1997). Courts in the Sixth Circuit consider eight factors in determining whether a likelihood of confusion exists: (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Hensley*, 579 F.3d at 610.

"But the likelihood of confusion analysis also involves a preliminary question: whether the defendants 'are using the challenged mark in a way that identifies the source of their goods.'" *Id.* (quoting *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 695 (6th Cir. 2003)). If a defendant is not using the mark to identify the source of its goods, then the mark is being used in a "non-trademark way," and neither the trademark infringement laws or the eight-factor analysis apply. *Hensley*, 579 F.3d at 610.

Nike contends that it did not use "Boom" to identify the source of its goods, but is using it in a "non-trademark way" by using "Boom" in its "primary or descriptive sense." Again, regardless of whether Tovey has alleged sufficient to facts to plausibly claim that Nike has used "Boom" as a trademark in its advertising, he has alleged sufficient facts to plausibly claim that Nike has used "Boom" as a trademark on the clothing it sells. The use of "Boom" on Nike's clothing occurs without any accompanying context that would indicate Nike's intent in printing the word on the clothing. Consequently, Tovey's allegation that Nike is using the word in such a way as to cause consumer confusion regarding the origin of the goods is, at least, plausible. Nike's argument to the contrary is not well-taken.

   *3.     Fair use*

12

Nike also argues that Tovey fails to allege sufficient facts to state a plausible claim for relief because Nike is making "fair use" of the word, "Boom."

"Fair use" of a trademarked term is a defense to liability under the Lanham Act even if a defendant's conduct would otherwise constitute infringement of another's trademark." *Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997).  The "fair use" defense is available under the following circumstances:

> the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.

15 U.S.C. § 1115(b)(4).

The problem with Nike's argument is that it cannot be raised in a motion to dismiss. As Nike's own pleadings note, "fair use" is a *defense* to liability.[3]  *See* Defendants' motion

---

[3]  Nike seems to conflate the use of a trademarked term in a "non-trademark way," thus using it in its "primary or descriptive sense," and the fair use defense.  While the two concepts are similar, they are legally distinct.  Both the use of a trademarked term in a "non-trademark way" and "fair use" of a trademarked term employ a trademarked term in a descriptive way.  The central issue in a "non-trademark way" analysis, however, is whether the use of the term creates consumer confusion.  The central issue in a "fair use" analysis, on the other hand, is whether a defendant should be permitted to use the term *despite* consumer confusion.  Whether a trademarked term is used in a "non-trademark way" addresses the issue of whether a defendant is using the term to identify the source of its goods, thus creating a likelihood of confusion.  If a defendant is not using the term to identify the source of its goods, then it is presumed that there is no likelihood of confusion, and there is no need for the court to apply the eight-factor analysis.  The fair use defense, however, is not primarily concerned with the possibility of confusion as to the source of defendant's goods, as the Supreme Court has made clear.  According to the Court, the Lanham Act was not "meant to deprive commercial speakers of the ordinary utility of descriptive words. 'If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase.'"  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (quoting *Cosmetically Sealed Industries, Inc. v. Chesebrough–Pond's USA Co.,* 125 F.3d 28, 30 (2d Cir. 1997)).  Thus, although consumer confusion is the touchstone of trademark infringement, "fair use can occur along with some degree of confusion . . . ."  *KP Permanent*

13

at 7.  Tovey is not required to address potential defenses in his complaint.  The Sixth Circuit merely requires plaintiffs pleading infringement to plead sufficient facts to make plausible that the plaintiff owns the trademark, defendant used it in commerce, and the use was likely to cause confusion.  The time to address a defense of "fair use" is in a motion for summary judgment or at trial, not in a motion to dismiss.[4]  Consequently, defendants' arguments regarding "fair use" are not well-taken.

Tovey alleges sufficient facts to state a plausible claim for relief with respect to his claim for trademark infringement.  Consequently, defendants' motion to dismiss Tovey's second ground for relief, trademark infringement, should be denied.

C.     *Reverse confusion*

Tovey's third ground for relief alleges that Nike's "Boom" creates reverse confusion in the minds of potential consumers.  Nike denies that reverse confusion is a distinct cause of action but, rather, is a theory of liability to establish trademark infringement.

In *Ameritech*, the Sixth Circuit addresses four theories of liability for trademark infringement:  "palming off," confusion of sponsorship, reverse confusion, and dilution.  The court described reverse confusion as follows:

> A reverse confusion claim differs from the stereotypical confusion of source or sponsorship claim.  Rather than seeking to profit from the goodwill captured in the senior user's trademark, the junior user saturates the market with a similar trademark and overwhelms the senior user.  The public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter.  The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

*Make-Up*, 543 U.S. at 122.

[4]  For this reason, Nike's arguments regarding "bad faith," an issue in determining whether a defendant is entitled to the defense of "fair use," are not appropriate at this time.

*Ameritech*, 811 F.2d at 964-65 (citations omitted).

Regardless of which theory of liability plaintiff chooses to assert, the claim is the same:  trademark infringement.  *See discussion at Ameritech*, 811 F.2d at 964-66.  As has already been shown, Tovey has properly pleaded a claim of trademark infringement.  Reverse confusion is not a separate ground for relief, merely one of several theories as to how such infringement occurred.  Defendant is correct, therefore, that trademark confusion is not a separate ground for relief.  Defendants' motion to dismiss, therefore, should be granted as to Tovey's third ground for relief, trademark confusion.[5]

D.      *Unfair competition by false designation of origin*[6]

Tovey's fourth ground for relief alleges the defendants are liable for unfair competition by means of false designation of origin in violation of 15 U.S.C. § 1125(a) ("§ 1125(a)").  According to Tovey, defendants' use of "Boom" in Nike's advertisements, promotions, distributions, and sales of their products falsely represents Nike's products as being authorized, sponsored, affiliated, or associated with Tovey's.  This, Tovey avers, results in customer confusion regarding the nature and origin of defendants' goods.  Defendants' do not respond directly to Tovey's fourth cause of action other than to assert that their use of "Boom" in advertising constitutes a descriptive fair use.

Section 43(a)of the Lanham Act, codified at § 1125(a), provides as follows:

---

[5]  Dismissal of this claim would not, of course, prevent Tovey from arguing reverse confusion or any other theory to prove a claim of trademark infringement in a motion for summary judgment or at trial.

[6]  Tovey entitles this section of his complaint "federal False Designation of Origin and Unfair Competition."  False designation of origin pursuant to § 1125(a) is a type of unfair competition; the two are not separate causes of action.  *See Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996).

15

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To prove a claim of false advertising pursuant to § 1125(a), a plaintiff must establish the following:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (citation omitted).

Tovey alleges that defendants used his trademark in Nike's advertisements and sales in commerce, which falsely represented Nike's products as being authorized, sponsored, affiliated, or associated with Tovey's.  Tovey further alleges that this use of his trademark resulted in customer confusion regarding the nature and origin of Nike's goods. Tovey contends, *inter alia*, that this use of his trademark trades upon his reputation or, alternatively, creates the impression that Tovey is trading upon defendants' reputation. Among the exhibits attached to Tovey's complaint are three displays for Nike's soccer

16

apparel and one for a Nike iPhone application ("app").  Complaint, Exhs. 23-26.  The three soccer images all depict a player bursting through the word, "Boom," while kicking or chasing a soccer ball.  The display for the app depicts the word, "Boom," with a Nike "swoosh" above it and to the left and with pictures of electronic devices displaying the app to the right and lower right of "Boom."

Defendants contend that their advertising used "Boom" purely in its descriptive sense as denoting "a game-changing moment in sports" and that their advertising used "Boom" as a "theme," rather than as a trademark.  They cite a number of cases to support the proposition that phrases which reference the effects, uses, or connotations of a product may fairly be described as "descriptive" of the product.  Defendants also claim that their use of the term is permitted by the "fair use" defense and that Tovey has failed plausibly to allege the "bad faith" necessary to defeat the defense.

Defendants' arguments are not well-taken.  In the depictions found in Exhs. 23-26, there is no verbal or non-verbal context which prompts the conclusion that "Boom" is descriptive of Nike's products, even if "descriptive" is taken in its broadest sense.  The depictions in those exhibits resemble the images on the fronts of Tovey's products:  The word "Boom" with an athlete engaging in a strenuous athletic feat.  Whether defendants' depictions are merely "descriptive" or are meant to suggest Tovey's trademark is an issue for the finder of fact.

As already noted, Tovey is not required to plead in his complaint facts which respond to defendants' potential defenses.  Thus, defendants' contention that Tovey's cause of action for unfair competition should be dismissed for failure to plead "bad faith" is not well-taken.

17

Tovey alleges facts which make plausible that defendants made misleading statements in interstate commerce that tended to deceive a substantial portion of the targeted consumers, that the statements would likely influence purchasing decisions, and that the challenged statements would harm Tovey.  This is all that a well-pleaded complaint for unfair competition by false designation of origin requires.  For this reason, defendants motion to dismiss should be denied as to Tovey's fourth cause of action, unfair competition.

E.    *Contributory trademark infringement*

Tovey's fifth ground for relief alleges that defendants are liable for contributory trademark infringement in violation of § 1114.  Defendants reply that there is no viable underlying claim of direct trademark infringement to support such a claim and that Tovey's undifferentiated pleading fails to provide defendants proper notice of their alleged wrongdoing.

Contributory infringement is a judicially-created doctrine derived from tort law.  *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012) (citing 4 MCCARTHY ON TRADEMARKS, § 25:17); *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2006).[7]  According to the Supreme Court,

> liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another.  Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances.  Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit.

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853-54 (1982) (citations

---

[7]  *See also William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526 (1924), the case from which the doctrine of contributory trademark infringement was later derived.

and footnote omitted).   An entity can "be held liable to the owner of a trademark if it intentionally induced a merchant down the chain of distribution to pass off its product as that of the trademark owner's or if it continued to supply a product which could readily be passed off to a particular merchant whom it knew was mislabeling the product with the trademark owner's mark."  *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 439 n.19 (1984); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005), ("One infringes contributorily by intentionally inducing or encouraging direct infringement."); and *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 106 (2d Cir. 2010). "It is not enough to have general knowledge that some percentage of the purchasers of a product or service is using it to engage in infringing activities; rather, the defendant must supply its product or service to 'identified individuals' that it knows or has reason to know are engaging in trademark infringement."  *Rosetta Stone*, 676 F.3d at 163 (citing *Sony Corp.*, 464 U.S. at 439 n.19); *see also Mini Maid Services Co. v. Maid Brigade Systems, Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992); *David Berg and Co. v. Gatto Int'l Trading Co.,* 884 F.2d 306, 311 (7th Cir.1989).  In addition, before there can be liability for contributory trademark infringement, an underlying claim of direct infringement must first be established. *Rosetta Stone*, 676 F.3d at 163; *see also Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007) ("[A] contributory infringement claim requires, at a minimum, both an allegation of a direct infringement by a third party, and an allegation of an intentional or knowing contribution to that infringement by the defendant.").

In sum, a claim for contributory trademark infringement has three elements:  (1) an underlying claim of trademark infringement by a third party; (2) the defendant's knowledge of that infringement; and (3) the defendant's inducing, causing, or materially contributing

to the infringing conduct.  *See Perfect 10*, 494 F.3d at 795.

Tovey's claim for contributory trademark infringement suffers from two serious problems.  First, it is impossible to determine which defendants Tovey intends as liable for contributory trademark infringement.  Contributory trademark infringement requires an underlying claim of trademark infringement *by a third party*.  While a party may be liable for both trademark infringement and contributory trademark infringement, the same acts cannot create both sorts of liability:  Some acts will be instances of direct infringement, while other acts will contribute to infringement by others.  Tovey seems to have some defendants and not others in mind as liable for contributory trademark infringement when he asserts that each defendant "acted as an agent of the partnership" in engaging in contributory trademark infringement.  Tovey also pleads that each defendant was "willfully blind to the unauthorized use of Plaintiff's trademark," which sounds like an attempt to plead the *scienter* requirement of contributory trademark infringement as to *all* defendants.  Consequently, it is not clear whether Tovey intends to state a claim for contributory trademark infringement against some defendants or against all defendants.

Second, Tovey fails clearly to plead the second and third elements of contributory trademark infringement, knowledge of the alleged contributory infringement and the conduct contributory to the infringement.  Tovey's relevant pleading on these issues are as follows:

111.  Each Defendant was willfully blind to the unauthorized use of Plaintiff's Trademark as no Partner exercised the care of a reasonably prudent person; this constitutes actual knowledge.

112.  Each Defendant showed willful intent by using the Plaintiff's Trademark and concept when they did so with the intent to cut out Plaintiff from what was rightfully

his and protected under federal law.

It is unclear from this pleading whether Tovey alleges that defendants constructively knew that others were infringing on Tovey's trademark or constructively knew that *they themselves* were infringing on Tovey's trademark.  Consequently, it is not clear whether Tovey is stating a claim for contributory trademark infringement or direct trademark infringement.

In short, Tovey's claim of contributory trademark infringement is confused.  It fails to state a short and plain statement of the claim showing that he is entitled to relief and fails to give each defendant fair notice of the substance of the claim and the grounds upon which it rests.  As a result, Tovey's cause of action for contributory trademark infringement does not state a claim upon which relief may be granted even under the more lenient, pre-*Twombly* standard of pleading.  For these reasons, defendants' motion to dismiss should be granted with respect to Tovey's fifth cause of action, contributory trademark infringement, or Tovey should be permitted to amend his complaint with respect to that cause of action, which should be required to identify which defendants are alleged to have committed contributory trademark infringement, the alleged knowledge of the infringement, and the conduct contributing to the infringement.

F.    *Vicarious trademark infringement*

Tovey alleges in his sixth claim for relief that defendants are liable for vicarious trademark infringement in violation of § 1114.  Defendants reply that there is no viable

21

underlying claim of direct trademark infringement to support such a claim and that Tovey's statement of his claim is conclusory and lacks sufficient factual allegations to survive a motion to dismiss.

Vicarious trademark liability is a cause of action recognized in some circuits but not yet recognized in the Sixth Circuit.[8]  *See, e.g., Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012); *Perfect 10*, 494 F.3d 788 [9th Cir.]; and *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.,* 955 F.2d 1143 (7th Cir. 1992).

Generally, liability by way of vicarious trademark infringement "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 180 (N.D.N.Y. 2011) (quoting *Gucci Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010), and summarizing cases).  In addition, as with contributory infringement, there must be an underlying direct infringement before there can be secondary infringement pursuant to vicarious infringement.  *See Kelly-Brown v. Winfrey*, 2012 WL 701262, at *7 (S.D.N.Y. March 6, 2012) (summarizing cases).  A complaint alleging vicarious copyright infringement must allege specific facts making plausible the existence of a partnership upon which to predicate vicarious infringement.  "[V]ague, puffery-like references to a 'partnership' between . . . [parties is] not enough to support vicarious liability." *Car-Freshner*, 822 F. Supp. 2d at 181 (quoting *Gucci Am.,* 721 F. Supp. 2d at 247), and merely "calling an organization a partnership does not make it one," *Kidz*

---

[8]  The Supreme Court has recognized secondary liability for trademark infringement in general and for contributory infringement in particular but not a cause of action for vicarious liability.  *See Metro-Goldwyn-Mayer*, 545 U.S. at 930.

*Cloz, Inc. v. Officially For Kids, Inc.,* 320 F. Supp. 2d 164, 174 (S.D.N.Y. 2004) (quoting

*Kosower v. Gutowitz,* 2001 WL 1488440, *6 (S.D.N.Y.  Nov.21, 2001)).

This court need not decide whether the Sixth Circuit would recognize a cause of

action for vicarious liability because Tovey fails to allege sufficient facts to make plausible

such a claim.  Tovey alleges the following regarding the parties' partnership relationship in

his general statement of facts and in his statement of his claim for vicarious liability:

> 55.  Defendant Nike, Inc. and Plaintiff [sic] Wieden+Kennedy have been partnered in advertising and tag lines since 1982. . . . .

> 58.  Defendant Nike, Inc. as well as Defendant(s) ABC Comnpanies 1-10 (names being fictitious) and Defendant(s) John Does 1-10 (names being fictitious) have direct and indirect partnerships and agency relationships with each other. . . .

> *        *        *        *        *

> 119.  Under agency principles and joint tortfeasor liability, all Defendants are members of an apparent or actual partnership and have authority to bind one another in transactions with third parties and/or exercise joint ownership or control over the infringing Plaintiffs['] [sic] Trademark and concept for use.

> 120.  The Partners continuously supported this Partnership in furtherance and for the benefit of the Counterfeit Campaign.

> 121.  Upon information and belief each Defendant acted in partnership and continuously supported the BOOM concept even though each knew, or should have known that the entire campaign was based on a counterfeit campaign.

> 122.  Upon information and belief each partner/Defendant receives a direct financial benefit from the unauthorized use of Plaintiff['] Trademark.

Complaint at 16.  The allegations in the complaint contain no facts that would make the

existence of a partnership between any defendants plausible.  They are, instead, mere

legal conclusions rather than factual allegations.  Consequently, they fail to meet the

*Twombly* standard of alleging "enough facts to state a claim to relief that is plausible on its

face."  *Twombly*, 550 U.S. at 570.  For these reasons, defendants' motion to dismiss with

23

respect to Tovey's sixth cause of action, vicarious trademark infringement, should be granted or Tovey should be permitted to amend his complaint with respect to that cause of action.

V.  Tovey's State Claims

Tovey's state claims include common law unfair competition; common law trademark infringement; a violation of the Ohio Deceptive Trade Practices ACT ("ODTPA"), Ohio Rev. Code § 4165.03 *et seq.*; tortious interference with prospective business relationships/common law civil conspiracy; and unjust enrichment.  Defendants move to dismiss all state claims.

*A.      Common law unfair competition*

Tovey's seventh ground for relief alleges common law unfair competition.  Tovey asserts that defendants' actions "constitute common law unfair competition in Ohio and other states where Defendant offers and/or advertises his goods, including this District." Complaint at 17.  Defendants contend that Ohio's common law action for unfair competition based on unauthorized use of a trademark parallels federal law and that because Tovey's federal claim is without merit, so is his Ohio common law claim.

Defendants are correct that an Ohio common law claim of unfair competition for unauthorized use of a trademark employs the same analysis as a federal claim of unfair competition by false designation of origin asserted pursuant to § 1125(a).  *See ETW Corp. v. Jireh Publ'g, Inc.,* 332 F.3d 915, 920 (6th Cir. 2003); *Procter & Gamble Co. v. Georgia-Pacific Consumer Products LP*, 2009 WL 2407764, at *3 (S.D. Ohio Aug. 3, 2009)).  The central issue in both claims is whether there exists a likelihood of confusion among customers because the parties used the same or substantially similar marks for

24

their goods or services.  *Allard Enters., Inc. v. Advanced Programming Res., Inc .,* 146 F.3d 350, 355 (6th Cir. 1998).  Thus, an analysis under the federal statute suffices to resolve the common law claim of unfair competition.  *ETW Corp.,* 332 F.3d at 920.

Defendants err, however, in assuming that Tovey's federal claim is without merit. As has already been shown, Tovey's claim of unfair competition by false designation of origin is sufficiently well pleaded to survive a motion to dismiss.  Thus, defendants' argument that Tovey's common law claim of unfair competition for unauthorized use of a trademark must be dismissed because the parallel federal claim must also be dismissed must fail.  For this reason, defendants' motion to dismiss should be denied with respect to Tovey's seventh cause of action, a common law claim of unfair competition.

B.    *Common law trademark infringement*

Tovey's eighth ground for relief alleges common law trademark infringement.  Tovey asserts that defendants without authorization used Tovey's trademark in commerce, irreversibly damaging the goodwill in Tovey's goods and mark.  This, Tovey contends, constitutes common law trademark infringement.  Defendants again respond that Ohio's common law action for trademark infringement parallels federal law and that because Tovey's federal claim is without merit, so is his Ohio common law claim.

As with common law claims for unfair competition, common law trademark infringement claims in Ohio follow the same analysis as claims asserted pursuant to the Lanham Act.  *ETW Corp.*, 332 F.3d at 920.  Thus, because Tovey's federal claim for trademark infringement survives defendants' motion to dismiss, Tovey's cause of action for common law trademark infringement also survives.  For this reason, defendants' motion to dismiss should be denied with respect to Tovey's eighth cause of action, common law

25

claim of trademark infringement.

C.      *Violation of the ODTPA*

Tovey's ninth ground for relief alleges deceptive trade practices pursuant to the ODTPA.  Tovey asserts that defendants made false representations of fact with respect to their goods by using the concepts and wording of his trademark without authorization.  According to Tovey, this violates the ODTPA.  Defendants again respond that the cause of action in the ODTPA parallels federal law and that because Tovey's federal claim is without merit, so is his claim pursuant to the ODTPA.

Ohio courts apply the same analysis to claims raised pursuant to ODTPA, deceptive trade practices, as is applied in assessing the law of unfair competition under the federal statutes.  *Cesare v. Work*, 36 Ohio App.3d 26, 26, 520 N.E.2d 586, 589 (1987) (paragraph one of the syllabus).  Thus, because Tovey's federal claim for unfair competition by false designation of origin survives defendants' motion to dismiss, Tovey's cause of action for unfair trade practices pursuant to ODTPA also survives.  For this reason, defendants' motion to dismiss should be denied with respect to Tovey's eighth cause of action, common law claim of trademark infringement.

D.      *Tortious interference with prospective business relationships/common law civil conspiracy*

Tovey's tenth ground for relief alleges tortious interference with business relationships and common law civil conspiracy.  Tovey alleges that  the defendants "have conspired in a malicious combination of two or more persons to intentionally interfere with the economic advantage Plaintiff should enjoy due to his . . . Trademark."  Complaint at 20.  Tovey further alleges that the defendants "intentionally conspired among themselves to steal Plaintiff[']s Trademark and entire marketing concept by using the BOOM tagline and

holding it out as a concept they had invented or created . . . ."  Complaint at 20.  According to Tovey, the defendants had a common plan or design in intentionally interfering with his business relationships.  Defendants argue that Tovey has failed properly to plead tortious interference with business relationships.

Under Ohio law, the tortious interference with contract and tortious interference with business relationships are closely related.  Tortious interference with contract occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to perform a contract with another; tortious interference with business relationships occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another.  *See A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73  Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (1995); *Geo-Pro Serv., Inc. v. Solar Testing Laboratories, Inc.*, 145 Ohio App. 3d 514, 523, 763 N.E.2d 664, 672 (2001).  "The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom."  *Geo-Pro Serv.*, 145 Ohio App. 3d at 523, 763 N.E.2d at 672.  The "business relationship" is a relationship that approaches the formality of contract.  "The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract."  *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 604,  774 N.E.2d 775, 780-81 (2002); *see also discussion at  Leibovitz v. Central Nat. Bank*, 75 Ohio App. 25, 26-28, 60

27

N.E.2d 727, 728-29 (1944).

Defendants contend that Tovey has not properly pleaded tortious interference with business relationships because Tovey has failed to plead the existence of a contract or the existence of a potential business relationship with a third party.  Defendants' argument regarding the failure to plead the existence of a contract confuses tortious interference with contract and tortious interference with business relationships, and that argument is not well-taken.  With respect to the alleged failure to plead the existence of a potential business relationship, defendants note that Tovey fails to identify any contract that was not consummated due to defendants' alleged acts, or any concrete business expectancy affected by those acts.

Tovey pleads as follows regarding the economic impact of defendants' alleged unauthorized use of his trademark:

> 160.  Plaintiffs [sic] have a reasonable expectation of prospective economic advantage associated with the federally granted, exclusive use [of] its Trademark and Defendants intentionally and inappropriately interfered with Plaintiff[']s reasonable expectation of prospective economic advantage. . . .

> 166.  As a result of the above actions, Defendants have been unjustly enriched by using the goodwill associated with the Plaintiff[']s Trademark and concept while depriving Plaintiffs of gaining a reasonable expected economic advantage which is and should be exclusive to Plaintiff.

Defendants' argument that Tovey's pleading fails to state a claim because he fails to allege a contract that was not consummated or any concrete business expectancy is well-taken.  Tovey must plead intentional interference with prospective contractual relations, not yet reduced to a contract, to state a claim for tortious interference with business relationships, and this he fails to do.

For the reasons given above, defendants' motion to dismiss should be granted with

28

respect to Tovey's tenth cause of action, tortious interference with prospective business relationships/common law civil conspiracy, or Tovey should be given an opportunity to amend his claim.

*E.      Unjust enrichment*

Tovey's eleventh ground for relief[9] asserts that defendants were unjustly enriched because of their unauthorized use of his trademark. Defendants argue that this claim must be dismissed because Tovey has failed to state a claim for trademark infringement. Because Tovey *has*, in fact, sufficiently stated a claim for trademark infringement, defendants' argument is without merit. For this reason, defendants' motion to dismiss should be denied with respect to Tovey's eleventh cause of action, unjust enrichment.

## VI. Conclusion

For the reasons given above, defendants' motion for summary judgment should be resolved as follows: (1) **GRANTED** as to Tovey's first (trademark counterfeiting) and third (reverse confusion) grounds for relief; (2) **GRANTED OR** Tovey should be given an opportunity to **AMEND** with respect to his fifth (contributory trademark infringement), sixth (vicarious trademark infringement), and tenth (tortious interference with business relationships) causes of action; and (3) **DENIED** as Tovey's second (trademark infringement), fourth (false designation of origin and unfair competition), seventh (common law unfair competition), eighth (common law trademark infringement), and ninth (a violation of the ODTPA) grounds for relief.

---

[9] This ground is mistakenly denominated Tovey's "Twelfth Claim for Relief" in his complaint. *See* Complaint at 21.

Date:  July 3, 2012                    s/ *Nancy A. Vecchiarelli*
                                       NANCY A. VECCHIARELLI
                                       U.S. MAGISTRATE JUDGE

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.