

| | |
|---|---|
| Jonathan W. Fountain<br>Partner<br>3993 Howard Hughes Parkway<br>Suite 600<br>Las Vegas, Nevada  89169 | Direct Dial: 702 949-8340<br>Direct Fax: 702 949-8374<br>JFountain@LRLaw.com<br>Admitted in: Nevada and Michigan |

Our File Number:  46131-00009

June 18, 2013

**VIA FACSIMILE**

The Honorable Nancy A. Vecchiarelli
United States Magistrate Judge
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 10B
Cleveland, Ohio 44114-1847

  Re: *Edward Tovey v. Nike, Inc., et al.*
     United States District Court (N.D. Ohio) Case No. 12-cv-00448-CAB

Dear Magistrate Judge Vecchiarelli:

  This firm represents NIKE, Inc. ("Nike") and its outside advertising agency Wieden + Kennedy, Inc. ("W+K") (together, "Defendants") in connection with the above-referenced action. This letter outlines Defendants' objections to Plaintiff Edward Tovey's initial (4/29/2013) and amended (6/4/2013) notices of Rule 30(b)(6) depositions of Nike and W+K, currently scheduled to occur on June 20, 2013 (for Nike) and June 21, 2013 (for W+K).

  Plaintiff Edward W. Tovey ("Tovey") filed this suit against Nike and W+K claiming that Nike's "boom" advertising campaign infringed his trademark for "BOOM YO!" on clothing. The Rule 30(b)(6) notices seek a substantial amount of discovery regarding intellectual property and marketing campaigns that are not at issue in the case and that have nothing to do with the "boom" campaign.

  Nike objects to **Topics 5, 6 and 7** of the deposition notices directed to it (attached hereto as Exhibit A), and W+K objects to **Topic 5** of the deposition notices directed to it (attached hereto as Exhibit B), which is similar to Topic 5 contained in the deposition notices directed to Nike.

### I. Topic No. 5 Will Not Lead To The Discovery Of Admissible Evidence and the Cost and Burden of the Discovery Outweighs its Potential Benefit.

  Topic 5 in the Nike and W+K deposition notices seeks representative (*i.e.*, Rule 30(b)(6)) testimony regarding all licensing agreements Defendants ever entered regarding any form of intellectual property.

    **NIKE TOPIC No. 5:** Licensing or royalty agreements for intellectual property or trademark use.  Has Nike, at any time, entered into an agreement whereby it paid for use of a mark or other intellectual property?  For what type of property?  For



June 18, 2012
Page 2

what purpose? On what terms? How does Nike determine when to pay a royalty or other consideration for intellectual property? How does it evaluate the value of intellectual property? Did Nike pay any royalties in connection to the "Boom" campaign? If so, why? To whom? When? Did Nike consider paying Ed Tovey a royalty or other consideration in relation to the "Boom" campaign? Why or why not?

**W+K TOPIC No. 5:** Licensing or royalty agreements for intellectual property or trademark use. Has Weiden + Kennedy [sic], at any time, entered into an agreement whereby it paid for use of a mark or other intellectual property? For what type of property? For what purpose? On what terms?

Defendants objected to providing information concerning Defendants' licensing or royalty agreements with third parties because such agreements are not relevant to this case and are not likely to lead to the discovery of admissible evidence. This is especially true to the extent Tovey seeks information concerning third-party licenses and royalty agreements related to patents, trade secrets, copyrights, rights of publicity, domain names, and any rights other than trademark rights and other than the trademark at issue in this case. Of course, Defendants do not object to questions pertaining to the "boom" mark.

Other courts have refused to permit the discovery of third party license agreements not at issue in the case. For example, in *Action Ink, Inc. v. Anheuser-Busch, Inc.*, No. 12–141, 2012 WL 6673125, at *1 (E.D. La. Dec. 20, 2012), the district court rejected plaintiff's assertion that, to prove the value of a trademark license for the trademark at issue, it would be helpful to review the defendant's licenses with third parties not involved in the suit. The court held that the cases cited by plaintiff do not support plaintiff's contention that defendant's prior licenses with other companies are relevant to determine the amount of a royalty for plaintiff's trademark, particularly given the case-by-case nature of the determination of relevance. The court held that, "[i]n light of the extent to which these topics would expand the scope of the 30(b)(6) depositions, the Court does not find the Magistrate Judge's Order denying inclusion of these topics to be clearly erroneous or contrary to law."

In this case, Tovey is trying to obtain evidence that what Nike paid to others for use of other intellectual property is somehow relevant to what Nike should allegedly pay Mr. Tovey for its use of the BOOM mark. However, royalties are determined based on numerous factors including the nature of the intellectual property at issue, the value of the intellectual property, the nature of the proposed use, the geographic extent of the proposed use, the period of the proposed use, the ability to exclude others from the use, etc. The discovery Tovey is seeking would open the door to "mini-trials" for each type of intellectual property Nike has ever paid to license to enable the parties in this case to compare and contrast all of the different factors. The more appropriate approach would be for Tovey to hire an expert witness to opine on the nature and



June 18, 2012
Page 3

amount of damages Tovey has allegedly suffered.  During the parties' June 17, 2013 conference call, the parties agreed to stay expert discovery in this case pending the resolution of Nike's and W+K's soon to-be-filed motion for summary judgment.

In addition, the scope of the topic is extraordinarily broad and burdensome.  It would require Nike to conduct significant research and spend a substantial amount of time to prepare the witness to answer questions on this broad topic.

Tovey will likely respond that knowing about Nike's other intellectual property licenses will help establish what a reasonable royalty would be had Nike decided to license BOOM YO! from Tovey.  However, Tovey's argument misses the mark for several reasons.

First, Tovey wrongly assumes he is entitled to royalties as a measure of damages.  "A royalty is a measure of damages for past infringement, often used in patent cases and in the context of trade secrets, but its use in trademark has been atypical." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208 (3d Cir. 1999) (en banc).  "Even when the courts have awarded a royalty for past trademark infringement, it was most often for continued use of a product beyond authorization, and damages were measured by the [negotiated] license the parties had or contemplated."  *Id.* at 208–09 (collecting cases).  The leading treatise on trademark law also directs that royalty damages are awarded in cases where a license already exists.  5 *McCarthy on Trademarks and Unfair Competition* § 30:85 (4th ed.) ("Usually, when the courts have awarded a royalty for past acts of infringement, it was for continued use of a mark after a license ended and damages were measured by the royalty rate the parties had agreed on . . . .").

Sixth Circuit cases are in accord and award royalty damages when there is an existing licensing agreement in place.  *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 341 (6th Cir. 2010) (awarding royalty based on pre-existing license agreement); *Luxottica Retail N. Am. Inc. v. CAS-MAN, Inc.*, No. 1:10–cv–374, 2011 WL 672063, at *5 (S.D. Ohio Jan. 14, 2011) ("In this case, the appropriate amount of damages should be based on the amount of royalties Pearle Vision was entitled to receive under its Franchise Agreements with defendants").  This rule makes sense.  Without a pre-existing licensing agreement, a court awarding damages based on a reasonable royalty for a trademark would be speculating as to what royalty rate a hypothetical arms-length negotiation would have produced.

Here, Tovey has admitted in his deposition that he never discussed licensing his BOOM YO! mark to Nike or W+K.  There is no pre-existing licensing agreement between Defendants and Tovey.  Royalty-based damages are wholly inappropriate in this case.  As such, third party licensing agreements used for the purpose of calculating such damages are completely irrelevant.



June 18, 2012<br>Page 4

Even if this Court finds that Nike and W+K should testify regarding some third party licenses at the deposition, the scope of the current deposition topic is too broad and should be limited by the Court.  Currently, this topic includes licenses and royalty agreements related to patents, trade secrets, copyrights, rights of publicity, domain names, and any rights other than trademark rights.  There is no logical basis to find how a patent/copyright/domain name license has any comparable value to determining a reasonable royalty for a trademark license.  Moreover, with respect to trademarks, Nike has trademark licenses with numerous athletes, sports leagues, and others to use marks on a variety of products.  Topic 5, as written, makes no distinction among them and seeks every license Nike has ever been a party to at any point in time.  In addition, most of these licenses will include private, confidential, and/or privileged information, including but not limited to third-party personal and business information, which Nike is under an obligation not to disclose.

II.  **Topic No. 6 Will Not Lead to the Discovery of Admissible Evidence and the Cost and Burden of the Discovery Outweighs its Potential Benefit.**

   **TOPIC No. 6:** Valuation.  How does Nike value their marketing campaigns?  Their good will?  How did it value the "Boom" campaign?  Did it calculate a return on investment or capital or other similar analysis for the "Boom" campaign?  How does Nike calculate their return on investment for marketing campaigns?  How did they do so for the Boom campaign?

   Nike objects to this topic for the same reasons that it objects to Topic 5 to the extent that it seeks information on marketing campaigns other than the "boom" campaign.

III. **Topic No. 7 Will Not Lead To Discovery Of Admissible Evidence and the Cost of the Discovery Outweighs its Potential Benefit.**

   Topic No. 7 (asserted for the first time on June 4, 2013), involves, among other matters, information regarding Nike's choice to file trademark applications for other marks unrelated to the "boom" mark.

   **TOPIC No. 7:** Trademark practice and procedure at Nike, generally.  What investigation into trademark issues does Nike engage in prior to initiating a marketing, branding or advertising campaign?  At what point in the development process?  Is the ability to trademark a new "brand," "logo," "theme," or the like a relevant or important consideration in deciding whether to pursue a given project?  What is involved in Nike's decision-making process as to whether to pursue a trademark?  Who is involved in making that decision?  Is it necessarily part of the business case for or against any potential campaign?  Who made the decision to not pursue a trademark for "Boom" and why?  ***Who made the decision to pursue***



June 18, 2012
Page 5

> *a trademark for "Crush," "Yo Girl," "Get Hot," "Dunk" and "Let Me Play"? Why did Nike consider those appropriate marks to have trademarked?* Has Nike taken any affirmative action to protect these marks? Does Nike thoroughly vet the viability of a particular mark as the proper subject of a trademark before filing each and every of its trademark applications? If so, how? What criteria are considered?

(emphasis added).

Information concerning Nike's general procedures related to trademarks (if any) are not relevant to this case or likely to lead to the discovery of admissible evidence where, as here, the specific mark, BOOM YO!, is directly at issue. This is especially true to the extent Tovey seeks information concerning other words or phrases such as "Crush," "Yo Girl," "Get Hot," "Dunk" and "Let Me Play."

Tovey will likely respond that Nike's registration of other marks that Tovey contends are descriptive is somehow relevant to whether "boom" is descriptive or to whether Nike should be estopped from arguing that "boom" is descriptive. It is well established that to determine whether a particular mark is descriptive, a court must consider whether the mark has an ordinary descriptive meaning when used in connection with the particular goods and services for which it is used and the nature of the particular use. Thus, whether "boom" is protectable as a trademark is not determined by considering other marks. In addition, discovery regarding other marks would open the door to mini-trials regarding whether the other marks are descriptive or not, how the marks were used, whether secondary meaning existed, etc. Finally, many if not all of the questions regarding this topic would be privileged, including, for example, what criteria Nike considers in determining whether to file a trademark application.

## CONCLUSION

For the foregoing reasons, Nike respectfully objects to the aforementioned topics to the extent they seek information that does not pertain to the "boom" campaign or that concerns Nike's and W+K's agreements with third parties and marks other than the "boom" mark. However, in the event the Court overrules Nike's objections, Nike respectfully requests that the depositions currently scheduled be adjourned and that the case schedule be adjusted so that Nike may have sufficient time to prepare its Rule 30(b)(6) designee(s) to testify.

Respectfully submitted,

LEWIS AND ROCA LLP

/s/ Jonathan W. Fountain

JWF/jc

617216.1



June 18, 2012
Page 6

Encls.
cc:    Michael J. McCue, Esq.
        Stuart Scott, Esq.
        Daniel Frech, Esq.

617216.1