**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD W. TOVEY, | ) | CASE NO: 1:12-CV-448 |
| | ) | |
| Plaintiff, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| NIKE, INC., *et al.*., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
| | ) | (Doc. No. 71) |

This case is before the undersigned United States Magistrate Judge upon

referral for the preparation of a Report and Recommendation on the motion for

summary judgment filed by Defendants Nike, Inc. ("Nike") and Wieden + Kennedy, Inc.

("W+K") (collectively, "Defendants"). This case arises out of claims by Plaintiff, Edward

W. Tovey ("Tovey" or "Plaintiff")), that Defendants infringed on his registered trademark,

"Boom Yo!" when Defendants used the word "boom" during an advertising campaign in

autumn of 2010 ("Boom campaign").  For the reasons set forth below, the Magistrate

Judge recommends that Defendants' motion for summary judgment be GRANTED.

## I.    Background

### A.    Introduction and Relevant Undisputed Facts

Plaintiff's claims in this case allege reverse confusion:

> The traditional pattern of classic "forward confusion" occurs
> when customers mistakenly think that the junior user's
> goods or services are from the same source as or are
> connected with the senior user's goods or services.
> Customers want to buy the senior user's product and
> because of the similarity of marks, mistakenly buy the junior

> user's product instead.  In "reverse confusion," customers purchase the senior user's goods under the mistaken impression that they are getting the goods of the junior user.  That is, reverse confusion occurs when the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user: the reverse of traditional confusion.  In a reverse confusion situation, rather than trying to profit from the senior user's mark, the junior user saturates the market and overwhelms the senior user.  The result is that the senior user loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.

Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:10 (4th ed. 2013).  In this case, Plaintiff – the senior user – alleges that, because Defendants – the junior users – saturated the market with "boom" during the Boom campaign, Plaintiff lost the value, identity and potential of his Boom Yo! mark.

The following facts are not dispute:

**1.      Tovey Uses "Boom Yo" and Decides to Register Boom Yo! as a Trademark**

Tovey first began using the term "boom yo" around 1989, when he used the term with friends at a sporting event.  (Deposition of Edward Tovey ("Tovey Dep.") at 32:2-12, Doc. No. 69-1.)  Tovey and his friends used the term to describe "when a major event happened, it was the BOOM and the YO was the aftermath or whatever." (*Id.* at 31:11-13.)  According to Tovey, Boom Yo! refers to a specific type of moment in sports:

> To me, it means a big moment in sports.  The BOOM would be the big moment or game-changing moment or a moment that changes the momentum in a game.  Like a slam dunk in basketball, you know, I envision the basketball slam dunk as the BOOM, and as the guy celebrates would be the YO.  A home run in baseball, the crack of the bat would be the BOOM.  As they round the bases, it would be YO.  Football

-2-

> would be – a hard tackle would be BOOM, and as he stands over the vanquished guy, it would be YO on the back.  So it was kind of like describing the momentum-changer in a game.

(*Id.* at 44:6-19.)

In 1998, Tovey began considering using the term "BOOM YO!" on clothing, and discussed the possibility of developing a clothing line based on the term with his son. (*Id.* at 36:1-20.)  In early 2005, Tovey first began designing products using BOOM YO! in his spare time.  (*Id.* at 45:17-19, 46:6-11.)  He purchased different brands of t-shirts (such as Fruit of the Loom or Champion) and physically applied iron-on images, or used software tools to create computer-generated images of items bearing the BOOM YO! phrase.  (*Id.* at 47:5-20, 49:20-51:1, 51:3-13, 96:17-97:24.)  He produced approximately 20 sample products, which he either sold to family and friends, or gave away.  (*Id.* at 56:22-57:3.)

On July 16, 2005, Tovey filed an application with the United States Patent and Trademark Office ("PTO") to register BOOM YO! as a trademark.  (PTO Trademark File Wrapper ("PTO Wrapper") at DEF008571, Doc. No. 69-6.)  He described the mark as consisting of "standard characters, without claim to any particular font, style, size or color."  (*Id.*)  He indicated that he intended to use BOOM YO! as a "saying for use on sweatshirts, t-shirts, ball caps, and other apparel items.  Most with Boom on the front and Yo! on the back – will use BOOM YO! on sleeves and as label of all items."  (*Id.* at DEF008572.)

In February 2006, the PTO responded to Tovey's application, advising him that he needed to change the wording used to describe the goods, and informing him that

-3-

the examining attorney had determined that Boom Yo! was possibly ornamental and, thus, did not function as a trademark.  (*Id*. at DEF008581.)  Although Tovey changed the description of the goods as requested by the PTO, he did not understand the issue with ornamental use, and, thus, did not respond to that concern.  (Tovey Dep. at 262:1-11, Doc. No. 69-1.)  In December 2006, the PTO issued a Notice of Allowance for the Boom Yo! mark, requiring Tovey to file a Statement of Use within six months.  (PTO Wrapper at DEF008589, Doc. No. 69-6.)  In May 2008, after receiving several extensions, Tovey filed a Statement of Use, in which he stated that he had used the Boom Yo! mark as early as January 2008.  (*Id*. at DEF008620.)  The Statement of Use was accompanied by images of articles of clothing bearing Boom Yo!, known as specimens.  (*Id*. at DEF8622-29.)  The specimens reflected that Tovey used multiple fonts and sizes for the lettering of Boom Yo! and that Boom appeared on the front of clothing and Yo! appeared on the back.  (*Id*.)  At his deposition in this case, Tovey conceded that the specimens he submitted to the PTO were not actual photographs of products that he had produced, but, rather, were computer-generated images of clothing bearing the Boom Yo! mark.  (Tovey Dep. at 51:3-13, 266:11-268:8, Doc. No. 69-1.)  On March 31, 2009, the PTO issued Tovey a registration for the trademark Boom Yo!.  (PTO Wrapper at DEF008654, Doc. No. 69-6.)

### 2.    Tovey Sells Boom Yo! Merchandise

Tovey did not advertise his Boom Yo! products in any manner.  (Tovey Dep. at 232:9-233:15, Doc. No. 69-1.)  He sold the products primarily at a flea market in Cleveland, which he attended three or four times per year between 2006 and 2008.  (*Id.*

at 83:3-85:8, 88:15-25, 91:3-11, 106:6-10, 127:24-128:2.)  There, he sold the products outside, from the trunk of his automobile.  (*Id.* at 173:19-174:6.)  At deposition, Tovey estimated that he sold between 10 and 20 items each time he attended the flea market. (*Id.* at 106:11-16.)  None of his products had sewn-in labels or hang tags with Boom Yo! on them.  (*Id.* at 184:13-19, 271:11-18.)

In 2008, Tovey developed a website for Boom Yo!, which operated for one year. (*Id.* at 107:13-15,108:8-10.)  The website consisted of four pages, which displayed images of different Boom Yo! products.  (*Id.* at 109:23-25, 110:17-11:2.)  He sold between 10 and 15 items using the website.  (*Id.* at 112:1-6.)  Tovey estimated that Boom Yo! generated between $3,000 and $5,000 in revenue between 1998 and 2010, which was approximately enough for Tovey to break even.  (*Id.* at 319:7-11.)

### 3.    Nike Develops the Boom Campaign

In 2008, creative and marketing teams in Nike's global brand design division began working on a concept to "promot[e] footwear associated with explosive movement."  (Declaration of Cory Hansen ("Hansen Decl.") at ¶ 3, Doc. No. 70.)  The "key message" was "the idea that explosive movement provides a game-time advantage to athletes participating in sporting events."  (*Id.* at ¶ 2.)  Cory Hansen, who was Nike's writing director for its global brand design division at the time, "was asked to develop this general idea" and to connect to "Nike's core consumers – 17-year-old athletes."  (*Id.* at ¶ 3.)  In doing so, he and his team "strived to come up with terms that were culturally relevant to [Nike's] consumers, were scientifically accurate, and had 'legs' for marketing."  (*Id.* at ¶ 2.)  Hansen began by brainstorming words that "would

communicate the idea of explosive movement," and produced a list of words that included: fuse, explode, dabomb, boom, TNT, dynamite and plastique.  (*Id*. at ¶ 5, Ex. A.)  Hansen "presented these words to [his] colleagues," and, ultimately, Hansen and his colleagues "thought 'boom' was a good word to use because 'boom' was something [they] believed was already within the vernacular of 17-year-old athletes and . . . they would perceive 'boom' as representing an exciting game-changing moment occurring during a sporting event as a result of explosive movement."  (*Id*. at ¶ 6.)  Thereafter, Hansen and his team developed a "boom" concept book and shared it with W+K to work on developing advertising related to the concept.  (*Id*. at ¶ 7, (Deposition of Jennifer Hooson ("Hooson Dep.") at 185:13-18, Doc. No. 72.)[1]

In summer 2009, Nike decided to use the "boom" idea as a seasonal advertising campaign, rather than a campaign limited to retail footwear.  (Hooson Dep. at 91:11-19., Doc. No. 72.)  In 2010, the Boom campaign was submitted to Nike's legal department, and, in July 2010, the legal department conducted a trademark search for trademarks using the word "boom."  (*Id*. at 151:17-152:1; Trademark Search Results, Doc. No. 69-14.)  The search revealed 61 registered or pending trademarks using the word "boom" in the clothing category in the United States.  (Trademark Search Results, Doc. No. 69-14.)  Tovey's BOOM YO! trademark was on the results list.  (*Id*.)  There is no dispute that Nike became aware of Tovey's trademark as a result of the trademark

_____

[1] Defendants designated Ms. Hooson's deposition testimony as confidential, and filed her deposition transcript under seal.  (Doc. No. 72.)  However, Defendants refer to and describe Ms. Hooson's deposition testimony without redaction in their brief in support of their motion for summary judgment.

search.  (Hooson Dep. at 165:4-5.)

Nike launched the Boom campaign in July 2010.  (Hooson Dep. at 136:5-9.)  The first Nike television ad featuring "boom" aired in September 2010.  (Id. at 136:12-14.)  Nike used "boom" on its website.  (Id. at 139:22-24.)  The campaign was featured in national advertisements.  (Id. at 144:4-8.)  Nike produced and sold hats, t-shirts, hooded sweatshirts and football receiver gloves bearing "boom" graphics.  (Id. at 145:16-146:7.)  Generally, Nike always included either the Nike "swoosh" or the trademark "Nike" on all of its products, and did so with products and advertments created for the Boom campaign.  (Id. at 173: 4-21, 229:18-22.)[2]  Nike developed a Boom smart phone app that interspersed encouraging and motivating statements from celebrity athletes and coaches in user's music play list.  (Id. at 247:16-24.)[3]  Ultimately, Nike spent $21.5 million on the Boom campaign.  (Id. at 195:8-9.)  The last advertisement in the Boom campaign ran in December 2010.  (Id. at 207:2-10.)  In-store advertising in the Boom campaign ended in June 2011.  (Id. at 210:17-21.)  Nike does not intend to use "boom" again in the future.  (Id. at 209:17-19.)

### 4.  Tovey Sees Defendants' Advertisements and Files Suit

In September 2010, Tovey saw a Boom campaign television advertisement on

---

[2] In their exhibits in support of their Motion for Summary Judgment, Defendants included photographs of various t-shirts produced for the Boom campaign.  (Doc. No. 69-16.)  Each one of the shirts has the Nike "swoosh" on it.  (Id.)

[3] According to Hooson, who testified on behalf of Nike pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the purpose of using "boom" on products was to "extend the campaign" by having the products act as an "advertisement for" Nike.  (Id. at 146:8-13.)

ESPN.  (Tovey Dep. at 301:3-8, Doc. No. 69-1.)  He received calls from friends who wondered whether Tovey had made an agreement with Nike to use Boom Yo!.  (*Id.* at 303:17-306:16.)  After contacting attorneys regarding possible legal action, Tovey filed suit against Defendants.  (*Id.* at 311:3-312:21.)

**B.    Procedural History**

In December 2012, Plaintiff filed a Complaint alleging numerous claims arising out of the alleged infringement.  (Doc. No. 1.)  Defendants filed a motion to dismiss (doc. no. 11) and, thereafter, the undersigned United States magistrate judge issued a report and recommendation that the motion be denied in part and granted in part (doc. no. 17).  In February 2013, the Court issued an order adopting the report and recommendation, and dismissed all of Plaintiff's claims except: (1) trademark infringement under 15 U.S.C. § 1114 (Count Two); (2) unfair competition under 15 U.S.C. § 1125(a) (Count Four); (3) common law unfair competition (Count Seven); (4) common law trademark infringement (Count Eight); (5) a claim under Ohio's Deceptive Practices Act (Count Nine); (6) common law unjust enrichment (Count Twelve); and (7) a claim for declaratory relief: (1) determining that Defendants' use "boom" infringed on Tovey's Boom Yo! mark, and (2) enjoining Defendants from using "boom"  (Count Thirteen).  (Doc. No. 30.)

In December 2013, Defendants filed their Motion for Summary Judgment.  (Doc. No. 71.)  Briefing is complete and this matter is ready for disposition.

## II.    Law and Analysis

Defendants assert several reasons that they are entitled to summary judgment on Plaintiff's claims in this matter.  First, Defendants contend that, because Plaintiff used  "Boom Yo!"  in its decorative sense, rather than as a mark to identify the source of his goods, he did not use the phrase as a trademark and, thus, cannot maintain a trademark infringement claim.  Second, Defendants argue that, even if Plaintiff did use the term as a trademark, Defendants' use of "Boom" constituted fair use.  Third, Defendants assert that, even if Defendants used "Boom" as a trademark and Plaintiff used "Boom Yo!" as a trademark, Plaintiff's claims fail because there was no likelihood of confusion as to the source of the parties' respective goods.  Finally, Defendants contend that Plaintiff's state law claims are duplicative of his federal trademark infringement claims and, thus, fail for the same reasons that his federal claims fail.  Plaintiff generally responds that there is a genuine issue of material fact with respect to each issue raised by Defendants.

The Court will address each argument in due course.

## A.    Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence of specific facts showing that there is a genuine issue for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The trial court has no duty to search the entire case record to establish that it is bereft of a genuine issue of material fact.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party.  *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  However, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In other words,

the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Id.* at 251.

**B.**    **Plaintiff's Federal Statutory Claims - Trademark Infringement and Unfair Competition**

Tovey's second and fourth claims for relief allege trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), respectively. His thirteenth claim requests declaratory relief enjoining Defendants from using "boom" because it infringes on Tovey's trademark.  A trademark is "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.  To prevail on his claim for trademark infringement under § 1114, Plaintiff must prove that: (1) he owns the "Boom Yo!" trademark; (2) Defendants used the trademark in commerce; and (3) Defendants' use of the mark was likely to cause confusion.  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  The Sixth Circuit also considers the likelihood of confusion in claims under § 1125(a), which does not require a plaintiff to prove that the mark at issue was registered.  *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion.").

**1.**    **Whether Tovey Used "Boom Yo!" as a Trademark**

In addition to the likelihood of confusion, a threshold issue common to both of

-11-

Plaintiff's federal claims is whether Tovey used "Boom Yo!" as a trademark:

> [W]hether alleging infringement of a registered trademark, pursuant to [§ 1141], or infringement of an unregistered trademark, pursuant to [§ 1125(a)], it is clear that a plaintiff must show that it has actually used the designation at issue *as a trademark*, and that the defendant has also used the same or similar designation *as a trademark*.

*Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998) (emphasis in original).  Because Plaintiff successfully registered Boom Yo! as a trademark, the mark is presumptively valid.  *See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 593 (6th Cir. 1989) ("Receipt of a registered trademark automatically invokes a statutory presumption that the trademark is valid.  The statutory presumption shifts the burden of proof to the party challenging the validity of the mark.").  A defendant may rebut this presumption, however, by offering evidence that the mark is invalid.  *Id*; *Tie Tech v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (Where "the defendant can demonstrate through law, undisputed facts, or a combination thereof that the mark is invalid, the evidentiary bubble bursts and the plaintiff cannot survive summary judgment"); *see also Talking Rain Beverage Co., Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir. 2003) (granting summary judgment to defendant despite plaintiff's registered trademark because the court determined that the trademark at issue was functional, and, thus, invalid).

Defendants contend that Plaintiff's use of Boom Yo! was ornamental and, thus, Plaintiff failed to use the mark as a trademark.   Accordingly, Defendants argue that Plaintiff's trademark is invalid, and he cannot prevail on his federal claims.  In its

-12-

Trademark Manual of Examining Procedure ("TMEP"), the PTO advises that purely

ornamental features do not constitute trademark use:

> Subject matter that is merely a decorative feature does not
> identify and distinguish the applicant's goods and, thus,
> does not function as a trademark.  A decorative feature may
> include words, designs, slogans, or other trade dress.  This
> matter should be refused registration because it is merely
> ornamentation and, therefore, does not function as a
> trademark.

TMEP at § 1202.03 (Oct. 2013).[4]  The Trademark Trial and Appeal Board ("TTAB")[5] has

concluded that, generally, where a slogan or feature "is not likely to be perceived as

anything other than part of the thematic whole of the ornamentation" of an article of

clothing, that slogan or feature is not used as a trademark.  *In re Astro-Gods*, 223

U.S.P.Q. 621 (TTAB 1984).  A mark, however, may be decorative while also functioning

as a trademark.  *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1087 (6th Cir.

1983) ("That an item serves or performs a function does not mean, however, that it may

not at the same time be capable of indicating sponsorship or origin where aspects of

the item are nonfunctional.").  Where "an alleged mark serves as part of the aesthetic

ornamentation of the goods, the size, location, dominance and significance of the

---

[4] The TMEP is available on-line at:
http://tmep.uspto.gov/RDMS/detail/manual/TMEP/current/d1e2.xml#/manual/TMEP/current/TMEP-1200d1e1.xml (last visited April 24, 2014).

[5] The TTAB us an administrative court that hears and decides adversary proceedings involving the registration, cancellation and use of trademarks, including appeals from examining attorneys' refusals to allow registration of trademarks.  *See* Trademark Trial and Appeal Board, www.uspto.gov/about/offices/ogc/ttab.jsp (last visited April 24, 2014).  Although not binding on this Court, decisions of the Trademark Trial and Appeal Board interpreting the Lanham Act are entitled to deference.  *In re Dr. Pepper*, 836 F.2d 508, 510 (Fed. Cir. 1987).

alleged mark applied to the goods are all factors which figure prominently in the determination of whether it also serves as an indication of origin." *In re Pro-Line Corp.*, 28 U.S.P.Q.2d 1141 (T.T.A.B. 1993) (determining that the applicant's use of the phrase "Blacker The College Sweeter The Knowledge" on t-shirts was not trademark use because the phrase "appears in large, bold letters centered on the shirt, filling virtually the entire upper half of the shirt" and the "prominent display of the phrase immediately catches the eye," and "therefore, [the alleged mark] is not likely to be perceived as anything other than part of the thematic whole of the ornamentation of the applicant's shirts.").

Defendants point to multiple items in the record to argue that Tovey used Boom Yo! in a descriptive or ornamental manner and, thus, his use of the mark was not trademark use.  Specifically, they note that Tovey did not use the same design, color, font or font size on all of the items he produced, and that the location of Boom Yo!, which is prominently displayed, varied from item to item.  (Ex. 1 to Tovey Dep., Doc. No. 69-19.)  Defendants point out that Plaintiff did not use hang tags or labels to identify his company as the source of the goods bearing Boom Yo!.  (Tovey Dep. at 184:13-19, 271:11-18, Doc. No. 69-1) Defendants also observe that Tovey did not use "TM" in connection with the phrase.  (Ex. 1 to Tovey Dep., Doc. No. 69-19.)  Finally, Defendants point to the opinion of their expert, Professor Jeffrey M. Samuels, that Tovey "provided no evidence that he used Boom Yo! as a trademark to identify the source of his goods." (Report of Professor Jeffrey M. Samuels ("Samuels Report") at ¶ 13, Doc. No. 69-17.)

Plaintiff argues principally that, because the PTO granted Tovey a registration of

the Boom Yo! mark, it is presumptively valid.  The parties disagree regarding the strength of the presumption.  Plaintiff insists that the presumption is "a strong one," subject to rebuttal only where a defendant's evidence of invalidity outweighs a plaintiff's evidence supporting the validity of the mark.  (Pl. Opp. at 12 (quoting *Tigrett Indus., Inc. v. Top Value Enter., Inc.*, 217 F. Supp. 313, 315-16 (W.D. Tenn. 1963)), Doc. No. 80.) Defendants contend that the presumption of validity in this context is "easily rebuttable" with evidence demonstrating that Tovey used the mark descriptively.  (Reply at 17-18 (citing *Custom Vehicles., Inc. v. Forest River, Inc.*, 476 F.3d 481, 486 (7th Cir. 2007)), Doc. No. 85.)

This question is a close one in this case, particularly in light of the different legal authorities upon which the parties rely and because the PTO granted Tovey's registration application despite his description of the mark as lacking any consistent font or font size or design.  Were this Court to give complete deference to the registration of the mark, then Defendants would not be entitled to summary judgment on this issue. The case law – even that cited by Plaintiff – holds, however, that the presumption of validity is rebuttable and, in this case, Defendants have offered sufficient evidence to overcome that presumption.  The evidence cited by Defendant demonstrates that Plaintiff did not use the Boom Yo! mark to identify the source of his goods.  Rather, Tovey used the mark – which consists of a common word – in different fonts, font sizes, designs, colors and locations on his goods.  He did not place his mark on hang tags or labels, and he did not designate the phrase Boom Yo! as a trademark on the goods. Accordingly, Plaintiff's use of Boom Yo! lacked the "[c]onsistent and repetitive use of a

-15-

designation as an indicator of source" that is "the hallmark of a trademark." *Rock and Roll Hall of Fame and Museum*, 134 F.3d at 755.  Defendants are entitled to summary judgment on this threshold question, and, thus, on each of Plaintiff's statutory and common law infringement claims, in this case.  Nonetheless, because the question is a close one, the undersigned will resolve the remaining issues in this case.

### 2. Whether Nike's Use of "Boom" Constituted Fair Use

The Lanham Act provides a "fair use" defense to a trademark infringement claim where the defendant's use of a plaintiff's mark was "otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C § 1115(b)(4).  A defendant is entitled to the fair use defense where the defendant "used the mark: (1) in its descriptive sense; and (2) in good faith." *ETW Corp. v. Jireh Publishing, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).  "Under the doctrine of 'fair use,' the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001) (emphasis in original); *see* McCarthy, *supra,* at § 11:45 ("By choosing a descriptive term, the trademark owner must live with the result that everyone else in the marketplace remains free to use the term in its original "primary" or descriptive sense.")

In this case, without conceding that Boom Yo! is not a valid trademark, Defendants argue that they are entitled to the fair use defense because they used "boom" in its descriptive sense and in good faith.  Plaintiff contends that, because there

-16-

is a genuine issue of material fact with respect to whether Defendants used "boom" in its descriptive sense, and because there is an inference of bad faith, Defendants are not entitled to summary judgment on the issue of fair use in this case.[6]

### a.      Whether Defendants Used "Boom" In Its Descriptive Sense

Defendants argue that they used "boom" to "refer to the 'game-changing moment' to arouse feelings of strength and power, which will appeal to Nike's core consumer, the seventeen-year old athlete."  (Motion for Summary Judgment at 22, Doc. No. 71-1.)  Defendants describe examples of the products at issue – which Tovey reproduced in his Complaint as infringing on his Boom Yo! mark – as follows:

> The first shirt contains "boom" in a fiery text around the
> initials of the boxing star, Manny Pacquiao. . . .  The second
> shirt contains imagery representing Philadelphia baseball,
> and the third is a Texas Rangers t-shirt. . . . The fourth is a
> black basketball hoodie with "boom" in shattering text. . . .
> The final long-sleeve shirt contains two opposing helmets
> below the Tostitos' logo and refers to the bowl match
> between Stanford and Virginia Tech.

(Motion for Summary Judgment at 22, Doc. No. 71-1.)    As reflected by the photographs of these products in Defendants' Motion for Summary Judgment, each

---

[6] Defendants assert that the Sixth Circuit "routinely" decides the issue of fair use "as a matter of law."  (Motion for Summary Judgment at 19.)  Plaintiff contends that fair use is appropriate for summary judgment only where there is no inference that the defendant acted in bad faith in using the plaintiff's mark.  (Pl. Opposition at 18.)  Plaintiff's argument is merely a restatement of the standard for summary judgment.  If the evidence in a particular case creates an inference of bad faith, there can be no lack of a genuine issue of material fact regarding the good faith element of the defense, and, thus, summary judgment would not be appropriate.  Plaintiff fails to identify any case law precluding this Court from entering summary judgment on the issue of fair use where there is no genuine issue of fact regarding the elements of the defense.

item described by Defendants incorporates the word "boom" in its design.[7]  (*Id*.)

Further, an advertisement identified by Tovey as infringing on his mark consists of a

close-up photograph of professional hockey player Steven Stamkos wearing a baseball

cap – which is turned backwards and bearing the Nike "swoosh" mark – and lifting a

barbell or large free weight while staring into the distance away from the observer's

point of view.  (*Id*. at 22; Ex. S to McCue Decl., Doc. No. 69-20.)  The image is

accompanied by text that reads: "Road to Boom - Steven Stamkos - Boom is that

game-changing moment.  The big hit.  The breakaway.  The goal.  Follow Steven

Stamkos' journey through summer training as he works to leave his mark on the

game."[8]  (Motion for Summary Judgment at 22, Doc. No. 71-1; Ex. S to McCue Decl.,

Doc. No. 69-20.)  According to Defendants, its use of "boom" in the advertisements and

products created for the Boom campaign use the word in its descriptive sense by

connecting the word to game-changing moments in sports and the emotions associated

with such moments.

        Plaintiff does not dispute that the word "boom" is "sometimes used in discussion

about sports;" is "sometimes used to describe events in sports;" and has "multiple

meanings."  (Plaintiff's Responses to Defendants' Request for Admissions at ¶¶ 26, 30,

31, Ex. B to McCue Decl., Doc. No. 69-2.)  Nor does he dispute that "boom" is

"sometimes used" to describe: a hit in baseball, a hard hit in a football game, a dunk in

_____

        [7] Plaintiff does not dispute Defendants' description of these articles of clothing.
Nor does he point to other articles of clothing that use "boom" in a substantially different
manner.

        [8] Plaintiff does not refer to any other advertisements that use "boom" in a
substantially different manner.

basketball, a strong blow in boxing, and a "game-changing moment in sports." (*Id.* at ¶¶ 32-36.) Plaintiff contends, however, that Defendants did not use "boom" in its descriptive or non-trademark sense, for three reasons.

Plaintiff argues that, because Defendants used "boom" to refer to the same idea as Plaintiff – a game-changing moment in sports – Defendants' use of Boom was trademark use, and, thus, was necessarily not descriptive. To support this argument, Plaintiff points to the fact that the PTO approved his registration of Boom Yo!, which he used to refer to game-changing moments in sports. According to Plaintiff, Defendants' use of "boom" to refer to that same type of moment is necessarily trademark use because, otherwise, the PTO would not have approved Plaintiff's application for a phrase that he uses to refer to the same thing. Even if Tovey's use of Boom Yo! is assumed to be valid trademark use, this argument is unavailing. Although Plaintiff's registration of Boom Yo! as a trademark protects his products from misappropriation by others, it does not protect "the *idea* behind that product from being used by others." *Hoopla Sports and Entertainment v. Nike, Inc.*, 947 F. Supp. 347, 353 (N.D. Ill. 1996) (emphasis in original); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (concluding that the Lanham Act protects "the producer of . . . tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication that is embodied in those goods"). Accordingly, the fact that Defendants used "boom" and Plaintiff used Boom Yo! to refer to the same concept is irrelevant, as the idea or concept behind Boom Yo! was not an issue for the PTO to

-19-

consider in granting Tovey's application.[9]  Further, Tovey does not dispute that "boom" is used to describe various specific moments in athletic competition, as well as generally "game-changing moments in sports."  His registration of BOOM YO! "was [not] meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). Rather, "[i]f any confusion results, that is a risk the plaintiff accepted when [he] decided to identify [his] product with a mark that uses a well known descriptive phrase." *Id*. Accordingly, the fact that Defendants used "boom" to refer to the same type of moment as Tovey does not preclude Defendants from prevailing on a fair use defense.[10]

---

[9]  Tovey's trademark registration application makes no mention of any connection between BOOM YO! and game-changing moments in sports.  (PTO Wrapper, Doc. No. 69-6.)  Nor did the PTO ever request that Tovey explain the idea or concept behind the proposed mark.  Accordingly, there is no evidence that the PTO considered Tovey's intention to connect BOOM YO! to game-changing moments in sports in determining whether to grant his trademark registration.

[10]  Plaintiff points to an excerpt from the undersigned's Report and Recommendation denying, in part, Defendants' motion to dismiss, in which the undersigned rejected Defendants' fair use arguments and concluded that: (1) Defendants did not use Boom in a descriptive sense; and (2) images on Defendants' products "resemble the images on the fronts of Tovey's products."  (Doc. No. 80 at 21 (quoting Doc. No. 17 at 17).)  This portion of an earlier Report and Recommendation in this case, however, does not support Plaintiff's argument that Defendants are not entitled to the fair use defense.  As a preliminary matter, given that the Report and Recommendation addressed Defendants' motion to dismiss, the undersigned considered only whether Plaintiff's allegations were sufficient to state a claim for relief.  (Doc. No. 17 at 6-7.)  Further, in its decision adopting in part and rejecting in part that Report and Recommendation, the Court implicitly overruled the undersigned's conclusion that Defendants' use of Boom was not descriptive.  (Doc. No. 30 at 12 ("In the present case, the term "BOOM" is commonly associated with exclamatory responses, exciting events, and more specifically "game-changing moments." Moreover, Defendant[s'] use of the phrase on [their] apparel is depicted with emphatic images such as flames, sporting events, and baseball hats.  Thus, the phrase is not used alone, rather, it is used to describe the images depicted alongside it.").)  Finally, as discussed above, it is not relevant that Defendants used Boom to refer to the same

Plaintiff also argues that this Court should apply the reasoning of the Second Circuit's decision in *Kelly-Brown* to determine that there is a genuine issue of material fact with respect to whether Defendants used "boom" in a trademark sense.  In that case, the plaintiff owned the registered service mark "Own Your Power," which she used in connection with her motivational services business.  In 2010, the defendant – Oprah Winfrey – began using the phrase "own your power" in connection with her television network.  Winfrey used the phrase on the cover of an issue of her magazine, as well as at an "Own Your Power" event that included motivational seminars and workshops.  She also used the phrase in numerous places on the web site for her production company.

The plaintiff filed a complaint alleging claims under the Lanham Act.  Winfrey moved to dismiss the complaint.  The district court granted the motion, concluding that Winfrey's use of the phrase constituted fair use.  On appeal, the Seventh Circuit reversed and remanded the case.  The appellate court rejected Winfrey's argument that her use of the phrase was descriptive, concluding that plaintiff's detailed allegations that Winfrey repeatedly used the phrase in a prominent manner was sufficient to allege that Winfrey used the phrase like a trademark, and, thus, was not entitled to the fair use defense.  *Kelly-Brown*, 717 F.3d at 310 ("Repetition is important because it forges an association in the minds of consumers between a marketing device and a product. . . . The slogan . . . becomes a symbolic identifier of a product or product line through

_____

idea or concept as Tovey.  The trademark laws protect marks, not the ideas or concepts behind them.  Nor do the trademark laws prevent the use of a term in its well known descriptive meaning.  *KP Permanent Make-Up, Inc.*, 543 U.S. at 122.

-21-

registration. . . . It is adequately alleged in the complaint that the defendants were trying

to create, through repetition across various forms of media, a similar association

between [Winfrey] and the phrase 'Own Your Power.'").  Specifically, the plaintiff

alleged that Winfrey's use of the mark was an attempt to "build a new segment of her

media empire around" the phrase, and, essentially, create a new sub-brand associated

with her media empire.  According to the court, these allegations were sufficient to

"allege[] that this repeated and wide-ranging usage of the phrase 'Own Your Power'

functioned as a mark"  *Id*.

In this case, Tovey argues that, because Defendants used "boom" in a variety of

places and in a number of ways, its use of the word was trademark use because, like

Winfrey, Defendants used the phrase to "form an association in the minds of

consumers."  According to Plaintiff, the reasoning of *Kelly-Brown* precludes summary

judgment on the issue of fair use in this case.

Plaintiff's reliance on *Kelly-Brown* is misplaced, primarily due to the procedural

posture of that case.  There, the Second Circuit was considering Winfrey's motion to

dismiss the complaint and, thus, was required to "accept all factual allegations in the

complaint as true, drawing all reasonable inferences in favor of the plaintiff."  *Id*. at 304.

The court observed that, "[o]f course, further information may emerge during discovery

that undermines [the plaintiff's] theory that [Winfrey's] use was an attempt to create a

sub-brand, but her allegations are sufficient *at this stage*."  *Id*. at 310 (emphasis added).

In this case, the issue is not whether Plaintiff's allegations are sufficient to support his

claims.  Rather, because Defendants seek summary judgment, the issue is whether

there is evidence that creates a genuine issue of material fact with respect to, *inter alias*, whether Defendants are entitled to the fair use defense.

In this case, Plaintiff points to no evidence that Defendants were attempting to form a sub-brand related to the word "boom."  Rather, although there is no dispute that Defendants used numerous types of media in the Boom campaign, the evidence in the record reflects that the Boom campaign was limited in duration, as it lasted for a year and ended in June 2011. There is no evidence in the record that Defendants used the Boom campaign to introduce new products or product lines.  In other words, Plaintiff has produced no evidence to demonstrate that Nike's intent in this case was similar to the intent *alleged* by the plaintiff in *Kelly-Brown*.  Accordingly, the Second Circuit's decision in that case does not preclude the application of the fair use defense in this case.

Finally, Plaintiff argues that, because "boom" did not describe "the products at issue," or the intended purpose, function or use of the products, Defendants did not use the word in its descriptive sense and are not entitled to the fair use defense.  This argument, however, relies on a narrow definition of "descriptive" that is unsupported by case law.  Rather, the descriptive sense of a mark is broader than merely referring to the physical characteristics, function, purpose or intended uses of the product on which it appears:

> [T]he statutory phrase "to describe the goods" is not narrowly confined to words that directly describe a physical quality such as size or quality.  Defendant's fair use can fit within the statutory defense if its use is descriptive in a broader sense.

-23-

McCarthy, *supra*, at § 11:49.  Federal courts have applied the fair use defense where the defendant's use of the trademarked phrase conveyed information other than the physical characteristics, function, purpose or intended use of a product, such as where the defendant used the phrase to: describe "a feeling inherently associated with the phrase or typically experienced by the consumer upon using the defendant's product," *Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1258 (S.D. Cal. 2008) (finding that the defendant's use of plaintiff's mark – "Ride Hard" – was descriptive because the defendant used the phrase "to capture the consumer's intended reaction of vigor and energy to Harley-Davidson products and merchandise"); describe "an action that the sellers hope consumers will take, using their product," *Cosmetically Sealed, Indust., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997); convey its generally-known slang meaning, *B&L Sales Assoc. v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 354 (2d Cir. 1970) ("'Come on Strong' and variations of that phrase . . . is a common slang term, the general use of which plaintiff cannot prevent by registering it in connection with certain goods."); create an "association" between the consumer and a particular product, *Citrus Group, Inc. v. Cadbury Beverages, Inc.*, 781 F. Supp. 386, 391 D. Md. 1991) (finding that the defendant's use of the phrase "your new main squeeze" was descriptive because it "was intended only to engender a sense of romance, incite enthusiasm, and create an association between the consumer and the product"); or convey "the emotions associated with" an event, *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001) (finding that the defendant's use of the plaintiff's mark – "The Joy of Six" – on t-shirts and other memorabilia commemorating

the Chicago Bulls' sixth NBA championship was descriptive because it described "the happiness associated with" the championship).[11]

In this case, Defendants' use of "boom" was descriptive. As Tovey has admitted, the word "boom" is used in the context of athletic competition, specifically to refer to important events in a particular game – a hit in baseball, a hard hit in football, a slam dunk in basketball, or a hard blow in boxing – or to "game-changing moments" in general. Accordingly, there is no reasonable dispute that "boom" has acquired a slang meaning in the context of sports, one that describes or refers to exciting and important moments in competition. The record reflects that Defendants used "boom" as slang to refer to those moments. That use constitutes descriptive use. *See, e.g., B&L Sales Assoc., 421 F.2d at 354*; *Citrus Group, 781 F. Supp. at 391* ("'Main squeeze' is a

_____

[11] Plaintiff generally does not address case law applying a broad definition of "descriptive" in the context of fair use. Rather, he relies on a decision from this Court, *Just Enterprises, Inc. v. Nurenberg Parris Heller & McCarthy Co., LPA*, No. 1:07-CV-1544, 2008 WL 2048167 (N.D. Ohio May 12, 2008) (Boyko, J.), to argue that, because Defendants did not use Boom to describe the physical characteristics, function or intended use of its products, it did not use Boom in a descriptive sense. In *Just Enterprises*, the defendant argued that it was using the plaintiff's mark – "Justice" – in the descriptive sense because the word described the services the defendant provided via the telephone number 1-888-JUSTICE. This Court rejected the defendant's argument, finding that "[t]he word "JUSTICE" does not describe a geographical location or a quality or character of the service provided[;] nor is it an adjective." 2008 WL 2048167 at *3. Nothing in the decision in *Just Enterprises*, however, reflects either that the defendant asserted that its use of the term was descriptive for any of the reasons discussed in the case law described above, or that this Court rejected a broad interpretation of "descriptive" in denying the defendant the defense. Rather, this Court decided only that, based on the specific facts before it, the defendant's use of "Justice" was not descriptive for the factual reason that the word did not describe the service provided by the defendant. Further, Plaintiff points to no legal authority – binding or persuasive – rejecting a broad interpretation of what it means for a mark to be used in its descriptive sense. In other words, this Court's decision in *Just Enterprises* does not preclude it from applying a broad interpretation of "descriptive" in this case.

-25-

common slang term, the general use of which Citrus cannot prevent by registering it in connection with certain goods."); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 311 (7th Cir. 2013) ("Courts more readily find a phrase descriptive when it is in common usage."). Further, Plaintiff does not dispute that Defendants used "boom" to engender "feelings of strength and power" connected with "game-changing moments," in order to appeal to its core consumer. This use of "boom" – to create an association between Defendants' target consumer and Nike's products – is also descriptive use, *see Citrus Group*, 781 F. Supp. at 391, as is Defendants' use of the word to convey the emotions associated with exciting or important moments in sports, *see Packman*, 267 F.3d at 640, *Bell*, 539 F. Supp. 2d at 1258. Accordingly, there is no genuine issue of material fact that Defendants used "boom" in its descriptive sense during the Boom campaign.

### b. Whether Defendants Used Boom in Good Faith

Courts determine whether a defendant used a plaintiff's mark in good faith by asking "whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the good or services." *Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006); *see also EMI Catalogue P'ship v. Hill, Holliday, Connors & Cosmopulos, Inc.*, 228 F.3d 56, 66 (2d Cir. 2000) ("[T]he focus of the [good faith] inquiry is . . . whether defendant in adopting its mark intended to capitalize on plaintiff's good will."). Here, Defendants point to the evidence regarding the development of the Boom campaign to argue that there is no genuine issue of material fact with respect to good faith in this case. They note that Defendants' use of "boom" began with Nike's employees compiling a list of words that

-26-

would communicate the idea of "an explosive moment in sports" to the company's core consumers. Defendants point to the time line of the Boom campaign's development – specifically, that Nike chose the word "boom" to communicate its message in 2008, well before the 2010 trademark search that revealed Plaintiff's registered BOOM YO! mark. Further, Defendants note that Nike used its own registered marks – either the Nike '"swoosh" or the word "Nike" – on its products to identify Nike as their source.

Plaintiff points to no evidence contradicting Defendants' version of how Nike developed the Boom campaign or selected the word "boom" to convey its intended message to its target market. Rather, Plaintiff argues that Defendants' knowledge of Plaintiff's BOOM YO! mark is sufficient to create an inference of bad faith in this case. Plaintiff's argument is not well taken.

Courts in this Circuit have concluded that "mere knowledge . . . of another's actual use of a mark is insufficient to show bad faith." *Scooter Store, Inc. v. SpineLife.com, LLC*, 777 F. Supp. 2d 1102, 1112 (S.D. Ohio 2011) (citing *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755-56 (9th Cir. 2006); *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670-72 (7th Cir. 1982)); *Nat'l Magazine Publ'g Co. v. New York Times, Co.*, 31 U.S.P.Q.2d 1304, 1994 WL 505230, *8 (N.D. Ohio Feb. 4, 1994) (Matia, J.) ("A good faith intent is often times revealed by requesting a trademark search and relying on the advice of counsel. *Bad faith requires more than mere knowledge of the similar mark.*") (emphasis added) (internal citation omitted); *see also Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1565 (Fed. Cir. 1987) ("[A]n inference of bad faith requires something more than mere knowledge of a prior similar mark.").

Those cases in which courts have found bad faith on the basis of a defendant's knowledge of a plaintiff's mark involve facts in addition to that knowledge that suggest bad faith.  For example, in *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704 (S.D. Ohio 2002), the defendant virtually copied the plaintiff's mark by adding an "s" to the end, and used websites, hyperlinks, internet domain names and metatags to "transport Internet users to defendants' lingerie and adult sex toy websites."  In *Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc.*, 434 F. Supp 697, 703-04 (E.D. Mich. 1976), the court concluded that "[t]he fact that Defendant adopted Plaintiff's distinctive logo some time after certain employees visited Plaintiff's store in Windsor appears to negate any inference of innocent adoption."[13]

In this case, Plainitff's argument that Defendants used "boom" in bad faith relies almost entirely on the fact that Nike was aware of Tovey's mark prior to commencing the Boom campaign.  The case law compels the conclusion that this knowledge alone is not sufficient to create an inference of bad faith.  This is particularly true in this case,

---

[13]  Plaintiff cites to three cases in which the court *declined* to find an *inference* of bad faith, despite the defendant's knowledge of the plaintiff's mark.  *See Empire Nat'l Bank of Traverse City v. Empire of America FSA*, 559 F. Supp. 650, 657 (W.D. Mich. 1983) (concluding that the defendant's knowledge of the plaintiff's mark was not sufficient to create an inference of bad faith because the defendant adopted the mark prior to learning that it was the plaintiff's registered mark); *Mishawaka Rubber & Woolen Mfg. Co. v. S S Kresge Co.*, 119 F.2d 316, 324-25 (6th Cir. 1941) (concluding that there was no evidence of fraudulent intent because the marks at issue were sufficiently dissimilar); *Whirlpool Props., Inc. v. LG Elecs. U.S.A., Inc.*, No. 1:03-CV-414, 2005 WL 3088339, *22 (W.D. Mich. Nov. 17, 2005) (finding that the parties had created a sufficient dispute of fact regarding bad faith, but noting that plaintiff pointed to various facts, including the inconsistent testimony by the defendant's employees concerning the decision to use the mark at issue, as well as the defendant's failure to conduct a trademark search and "other indicia of lack of due care").

where Defendants have produced unrefuted evidence establishing that Nike chose

"boom" as the central theme of its campaign nearly two years before learning about

Tovey's mark, and that the Boom campaign was originated and developed entirely by

Nike and W+K.[14]  Further, the fact that one of Nike's registered marks – either it's

"swoosh" symbol or "NIKE" – appeared on the advertisements and merchandise

created for the Boom campaign supports a finding of good faith in this case.  *See EMI*

*Catalogue P'ship*, 228 F.3d at 67 ("Concededly, defendants' display of its own logo in

the TV ad is evidence . . . of defendants' good faith."); *Bell,* 539 F. Supp2d at 1259

(finding that defendant used "Ride Hard" in good faith because it included its name or

logo "on every advertisement and piece of merchandise bearing the "Ride Hard"

phrase").[15]  In short, Plaintiff offers no evidence that creates a genuine issue of material

---

[14] In his Complaint, Plaintiff alleged that Nike had direct knowledge of Plaintiff's
Boom Yo! marketing concept and trademark because Plaintiff had discussed the idea
with Savannah Brinson, who was then the girlfriend of LeBron James, a spokesperson
and endorser of Nike.  (Doc. No. 1.)  During his deposition in this case, however, Tovey
admitted that he had no evidence to support his claim that Brinson or James discussed
Boom Yo! with Nike.  (Tovey Dep. at 300:2-10, Doc. No. 69-1.)

Further, in reverse confusion cases, courts have determined that the question of
the junior user's intent should not focus on whether the junior user intended to take
advantage of the good will established by the senior user but, rather, whether the junior
user was careless, indifferent or otherwise culpable in selecting the mark, *Altira Group
LLC v. Phillip Morris Cos., Inc.*, 207 F. Supp. 2d 1193, 1200 (D. Colo. 2002); *Mars
Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1152 (D. Minn. 2001), or
whether the junior user intended to push the senior user out of the market, *Freedom
Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 478 (3d Cir. 2005).  Plaintiff
neither discusses nor offers evidence regarding whether Defendants engaged in any of
the conduct that can demonstrate bad faith in reverse confusion cases.

[15] Plaintiff argues that, because Plaintiff's claim is one of reverse confusion –
where a junior user misappropriates the mark of a senior user, causing the public to
assume that the senior user's products are really the junior user's products –
Defendants' use of Nike's marks is actually evidence of Defendants' bad faith in this
case.  The cases upon which Plaintiff relies, however, are inapposite.  In the portion of

fact with respect to whether Defendants intended to capitalize on the good will of BOOM YO! in adopting "boom" for its campaign.

Because there is no genuine issue of material fact with respect to whether: (1) Defendants used "boom" in its descriptive sense defense; or (2) Defendant's use of the phrase was in good faith, Defendants are entitled to the fair use defense in this case.  Accordingly, Defendants' motion for summary judgment should be granted with respect to Plaintiff's second, fourth and thirteenth claims.

### 3.    Whether There was a Likelihood of Confusion in this Case

Defendants argue that, even if the fair use defense is not applicable in this case, they are entitled to summary judgment on Plaintiff's trademark infringement claims because there is no genuine issue of material fact with respect to the issue of likelihood of confusion.  "The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,109 F.3d 275, 280 (6th Cir. 1997).  When

───────────────────────

*Sands, Taylor & Wood Co. v. Quaker Oats, Co.*, 978 F.2d 947, 959-60 (7th Cir. 1992), quoted by Plaintiff, the court discussed the issue of the likelihood of confusion between the two marks, not whether the defendant acted with good or bad faith in using the mark at issue.  In *Ameritech, Inc. v. Am. Info. Tech. Corp.*, 811 F.2d 960 (6th Cir. 1987), the Sixth Circuit described the various types of confusion claims, without discussing the issue of bad faith in the context of reverse confusion.  The portion of the decision in *Upjohn Co. v. Am. Home Prods. Corp.*, No 95-CV-237, 1996 WL 33322175, *11 (W.D. Mich. Apr. 5, 1996), cited by Plaintiff is not the holding of the district court in that case, but, rather, the district court's description of one party's argument.  Finally, in *Sports Auth. v. Abercrombie & Fitch, Inc.*, 965 F. Supp. 925, 936-37 (E.D. Mich. 1997), the district court considered the issue of whether the defendant's placement of patent and trademark symbols near the plaintiff's mark suggested that the defendant intended to use the plaintiff's mark as a trademark, "which would preclude a fair use defense."

evaluating the likelihood of confusion in a particular case, courts consider: (1) the strength of the senior mark; (2) the similarity of the marks; (3) the relatedness of the goods and services; (4) evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the intent of the defendant in selecting the alleging infringing mark; and (8) the likelihood of expansion of the product lines. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792-93 (6th Cir. 2004). "A focus on the 'ultimate question' is critical . . . ; a genuine dispute of material fact on any one of the eight factors does not demonstrate that a grant of summary judgment [is] improper when there is not enough total evidence for a jury to conclude that the junior mark is likely to confuse consumers." *Id.* at 793.[16]

### a.    Strength of Boom Yo!

A mark's strength "is a factual determination of the mark's distinctiveness. . . .  A mark is strong and distinctive when the public readily accepts it as the hallmark of a particular source; such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *Daddy's,* 109 F.3d at 280.  In most trademark infringement cases, the stronger the senior mark (the earlier of the marks at issue – in this case, Plaintiff's Boom Yo! mark), the greater the likelihood of confusion

_____

[16] Plaintiff contends that "an issue of material fact regarding any of these factors" is sufficient to avoid summary judgment on the likelihood of confusion.  (Opp. at 29.) The authority to which Plaintiff cites to support that contention, *Parks v. LaFace Records,* 329 F.3d 437 (6th Cir. 2003), does not stand for that proposition.  Rather, in that case, the Sixth Circuit merely listed the factors for likelihood of confusion and observed that "[b]ased upon [the evidence related to the factors], we then decide if the plaintiff has raised a genuine issue of material fact as to the likelihood of consumer confusion." *Id.* at 447-48.

regarding the origin of the parties' goods, and "the more protection it is due." *Id*. In this context, courts categorize marks along a "spectrum which ranges" – from weakest to strongest – " through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116-17 (6th Cir. 1996).

Here, Defendants argue that Plaintiff's Boom Yo! mark is weak and, therefore, entitled to narrow protection. In response, Plaintiff contends that his mark is "a relatively strong mark, worthy of full protection," and provides analysis supporting this contention. (Pl. Opp. at 30-31, Doc. No. 80.) Plaintiff also briefly raises the argument that, because he is alleging reverse confusion, "it is debatably the strength of Nike's "boom" campaign that is at issue." (*Id*.) He does not, however, provide any further analysis of his claim as one alleging reverse confusion.

Plaintiff's perfunctory argument is likely correct, as the two types of "confusion" claims involve different analyses of this element of the relevant analysis:

> Since in a reverse confusion case, the junior user is not
> trying to take a free ride on the recognition value of a strong,
> senior mark, there is no reason to apply the standard
> requirement that the senior user have a mark strong enough
> that confusion will result. Rather, the court should evaluate
> the strength of the junior user's mark so as to gauge its
> ability to overpower the senior user's mark.

McCarthy, *supra*, at 23:10; *see Altira Group LLC v. Phillip Morris Cos., Inc.*, 207 F. Supp. 2d 1193, 1203 (D. Colo. 2002) ("The more sensible analysis in reverse confusion cases is to analyze the strength of the junior user's mark in order to determine its ability to overpower that of the senior user."); *Checkpoint Sys., Inc. v. Check Point Software*

*Techs., Inc.*, 269 F.3d 270, 303 (3d Cir. 2001) (In a reverse confusion case, "[c]ourts should look at the commercial strength of the junior user's mark to determine whether its advertising and marketing has resulted in a saturation of the public awareness of the junior user's mark.") (internal quotation marks omitted); *Sands,* 978 F.2d at 959 ("In a reverse confusion case, then, it may make more sense to consider the strength of the mark in terms of its association with the junior user's goods.").

Defendants do not dispute that Tovey's claim is one of reverse confusion.  (Def. Reply at 13, Doc. No. 85.)  They do not, however, discuss the strength of their use of "boom" during the Boom campaign.  Further, and perhaps more problematic in this case, Plaintiff raises the possibility that Defendants engaged in the incorrect analysis of this element of the likelihood of confusion determination in a perfunctory manner.  He provides no further analysis or argument on this point.  Nor does he point to, or the explain the relevance of, any evidence regarding the "strength" of the Boom campaign. In short, the parties have provided the Court with insufficient information and discussion to determine this factor.  Accordingly, in this case, this issue is not in an appropriate posture to affect summary judgment.

b.    Similarity of Boom Yo! and "Boom"[17]

"Similarity of marks is a factor of considerable weight" in the likelihood of

confusion analysis.  *Daddy's*, 109 F.3d at 283.  When analyzing similarity, courts should

"examine the pronunciation, appearance and verbal translation" of the relevant marks.

*Id*.  In this context, side-by-side comparison of the marks is inappropriate.  *Id*.  Rather,

"courts must determine whether a given mark would confuse the public when viewed

alone, in order to account for the possibility that sufficiently similar marks may confuse

consumers who do not have both marks before them but who may have a general,

vague or even hazy impression or recollection of another's mark." *Id*. (internal citations

and quotation marks omitted).  "Courts must view marks in their entirety and focus on

their overall impressions, not individual features." *Id*; *see* McCarthy, *supra*, at 23:41

("Conflicting composite marks are to be compared by looking at them as a whole, rather

than breaking the marks up into their component parts for comparison.  This is the 'anti-

dissection' rule.  The rationale for the rule is that the commercial impression of a

composite trademark on an ordinary buyer is created by the mark as a whole, not by its

component parts.").  However, a court may give more weight to distinctive elements of a

mark and less weight to descriptive elements.  *See AutoZone*, 373 F.3d at 796 ("The

---

[17] In arguing that Defendants' use of "boom" was confusingly similar to his own mark, Plaintiff relies on the opinion of his expert, Rhonda Harper.  The undersigned, however, has recommended that Ms. Harper's expert report be stricken and her testimony be excluded on the basis that they are not sufficiently reliable to be admissible under Rule 702 of the Federal Rules of Evidence.  (Doc. No. 86.)  Plaintiff did not object to the undersigned's report and recommendation, which, to date, has been neither adopted nor rejected by the District Court.  Accordingly, the undersigned did not consider those arguments that relied on Ms. Harper's opinion.

differences between the first syllable of POWERZONE and AUTOZONE cannot be ignored, particularly giving the ubiquity of ZONE."); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 423 (6th Cir. 1999) (finding that the marks JET and AEROB-A-JET were not confusingly similar, in part because "the most prominent part of AEROB-A-JET is not the shared term JET but the initial syllables AEROB-A").

Plaintiff notes that, because this is a reverse confusion case, the fact that Defendants' advertisements and products generally bore both the word "boom" and one of Nike's trademarks could support the conclusion that their use of "boom" was confusingly similar to BOOM YO!.  Some courts have concluded that, in a reverse confusion case, the presence of junior user's trademark on a product could "aggravate, rather than mitigate, reverse confusion, by reinforcing" the connection between the junior user and the senior user's mark.  *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 229-30 (3d Cir. 2000); *see also Sands*, 978 F.2d at 959-60 (noting that in a reverse confusion case, "the linking of the plaintiff's mark with the defendant's brand name is an aggravation, not a justification").[18]

---

[18] Plaintiff also contends that the undersigned has already concluded that Defendants' use of "boom" is confusingly similar to Plaintiff's BOOM YO! mark because Defendants and Tovey used the marks in the same inconsistent way.  (Pl. Opp. at 33, Doc. No. 80.)  Specifically, Plaintiff points to the July 2102 report and recommendation in this matter, in which the undersigned observed that, given the parties' similar uses of the marks at issue – without consistent lettering, colors or other stylistic markers – and because Tovey generally used "Boom" on the front of clothing and "Yo!" on the back, it was "plausible" that there was a likelihood of confusion in this case.  (July 2012 Report and Recommendation at 11, Doc. No. 17.)  Given, however, that the July 2012 report and recommendation was addressing a motion to dismiss for failure to state a claim, the undersigned was considering only whether Tovey's factual claims had "facial plausibility," (*id.* at 6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).), which is clearly a different standard than determining whether, based on the evidence in the record,

-35-

Here, although arguably a close question in this case, there is no genuine issue of material fact regarding whether Defendants' use of "boom" was confusingly similar to Tovey's Boom Yo! trademark.  There are obvious differences between the two marks.  Plaintiff's mark is two words, totaling two syllables.  Defendants used "boom," which is one syllable.  Although the two marks share a common element – "boom" – Plaintiff's mark also consists of a second word, "Yo" and an exclamation point, which serves to emphasize the word "Yo," both visually and aurally.  Tovey concedes that "Yo!" is an important part of his mark.  (Tovey Dep. at 314:25-315:8, Doc. No. 69-1.)  Further, as in *Jet, Inc.*, the shared element – "boom" – is ubiquitous, as Defendants have provided evidence of numerous other trademarks that use that word (Trademark Search Results, Doc. No. 69-14), and Tovey concedes that the word "boom" is used to describe various events in athletic competition.  Although the presence of Nike's trademarks on it's "boom" products makes this factor a closer question than it may have been absent those marks, the differences between "boom" and Boom Yo! are sufficient to weigh against a finding of confusion on this factor.[19]

---

there is a genuine issue of material fact with respect to this issue.

[19] Defendants also argue that their use of "boom" was not confusingly similar to Boom Yo! because Tovey sold his products primarily at a flea market and relied on little or no advertising whereas Nike sold its Boom products at retail outlets and used television commercials and retail advertisements.  (Summary Judgment Motion at 30, Doc. No. 71-1.)  Although this argument is likely more relevant to other factors in the likelihood of confusion analysis – specifically, the relatedness of the parties' goods and the marketing channels they used – it does reinforce the notion that consumers are not likely to find the two marks confusing, which is the "ultimate question" in the likelihood of confusion analysis.  *Homeowners Group*, 931 F.2d at 1107.

### c.    Evidence of Actual Confusion

Although evidence of actual confusion "is undoubtedly the best evidence of likelihood of confusion," *Wynn*, 839 F.2d at 1188, the lack of such evidence "is rarely significant," *Daddy's*, 109 F.3d at 284.  Accordingly, where a plaintiff offers no evidence of actual confusion, "this factor should not have any bearing on the analysis" of likelihood of confusion.  *AutoZone*, 373 F.3d at 799.  Here, other than contending that various acquaintances who saw Defendants' Boom campaign advertisements believe that he had entered into some sort of agreement with Nike to use Boom Yo!, Plaintiff offers no evidence of actual confusion.  Accordingly, this factor has no bearing on the issue of confusion in this case.

### d.    Relatedness of Goods and Marketing Channels Used

The Sixth Circuit employs three criteria for assessing the relatedness of goods in a trademark infringement case:

> First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; finally, if the products are unrelated, confusion is highly unlikely.

*Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003).  The relevant inquiry "focuses on whether goods or services with comparable marks that are similarly marketed and appeal to common customers are likely to lead consumers to believe that they come from the same source, or are somehow connected with or sponsored by a common company."  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 633 (6th Cir. 2002) (internal quotation marks omitted).  "Services and goods are related not

-37-

because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company."  *Daddy's*, 109 F.3d at 283-84 (internal quotation marks omitted); *see Leelanau Wine Cellars*, 502 F.3d 504, 516 (6th Cir. 2007) (finding that, although the parties sold similar products in the same geographic region, they were in direct competition only where they sold their products in the same locations).

Further, the marketing channel factor "looks at the parties' predominant customers and their marketing approaches."  *AutoZone, Inc.*, 373 F.3d at 793 (internal quotation marks omitted).  "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases."  *Therma-Scan, Inc.*, 295 F.3d at 636.

Here, there is no real dispute that Nike and Tovey target the same consumers – young athletes – to sell the same types of products – athletic apparel.  However, in the context of these factors, the similarities between Defendants' "boom" products and Tovey's BOOM YO! products end there.  Tovey engaged in virtually no marketing for his BOOM YO! products.  He sold his products primarily from the trunk of his car at a flea market in Cleveland, Ohio.  Although he established a web site for BOOM YO!, he sold only a small number of products over the Internet.  In contrast, Nike sold its "boom" products as one element of a national campaign, which involved television commercials, print advertising, Internet advertisements, web sites, celebrity appearances and endorsements, and a downloadable smart phone app.  Nike sold its

"boom" products in retail stores and via its Internet site.  Although the products at issue

fall into the same broad category, the parties' employed entirely different marketing

strategies.  Given the vast differences between Defendants' marketing and sale of Nike

products and Tovey's marketing and sale of his BOOM YO! products, there is no

evidence that consumers would likely believe that the parties' products came from the

same source, or were somehow associated with one another.  Accordingly, these

factors –  relatedness of the parties' goods and the marketing channels they used  –

weigh against a likelihood of confusion.

### e.    Likely Degree of Purchaser Care

In analyzing the degree of purchaser care, courts use the standard of "the typical

buyer exercising ordinary caution."  *Daddy's*, 109 F.3d at 285 (internal quotation marks

omitted).  Where "even a minimal degree of care" would be sufficient for a consumer to

differentiate between plaintiff's and defendant's products, this factor favors lack of

confusion.  *See, e.g., Gray v. Meijer, Inc.*, 295 F.3d 641, 650 (6th Cir. 2002).  Further,

"the ultimate significance of a given degree of care . . . often will depend upon its

relationship with the other seven factors."  *Daddy's*, 109 F.3d at 285 (noting that this

factor is less significant than the similarity of the marks at issue, such that, where marks

are "quite similar . . . purchaser care will decrease the likelihood of confusion only

minimally").

Plaintiff contends that, because the products at issue in this case are "relatively

inexpensive," consumers are not likely to exercise a high degree of care in purchasing

them and, thus, this factor favors confusion.  Although a correct statement of law, *see,*

-39-

*e.g., Gray*, 295 F.3d at 650 ("[T]he average consumer is likely not to exercise a high degree of care in purchasing relatively inexpensive and fungible products, such as snack food."), Plaintiff offers no evidence to support his contention that the products at issue are "relatively inexpensive" or that consumers exercise a low degree of care in purchasing them.  Further, Plaintiff's argument fails to account for the relationship between this factor and the other factors in the likelihood of confusion analysis.  *See Homeowners*, 921 F.2d at 1107 (The likelihood of confusion factors are "interrelated in effect.").  Given that the marks are not confusingly similar, and given the vast difference between the parties' marketing channels and sale locations, a reasonable consumer would have to exercise only a minimal degree of care to ascertain that the parties' products are not related, or from a common source.  Accordingly, this factor weighs against the likelihood of confusion.[20]

### f.    Defendants' Intent in Selecting "Boom"

In most trademark infringement claims, "proving intent [to infringe] is not necessary to demonstrate likelihood of confusion, but the presence of that factor strengthens the likelihood of confusion."  *AutoZone, Inc.*, 373 F.3d at 799 (internal quotation marks omitted).  Some courts, however, have concluded that, in reverse

---

[20] With respect to this factor, Plaintiff argues that 'the concern is that customers seeing Tovey's apparel . . . will assume that those shirts are in fact "knockoffs" of Nike shirts." (Pl. Opp. at 38, Doc. No. 80.)  This argument, however, is irrelevant with respect to infringement claims, as it is not an argument about confusion, but, rather, about reputation.  *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 993 (7th Cir. 2004) ("The purpose of trademark law . . . is to prevent confusion by consumers concerning the sources of the products they buy.  Knowing or thinking that a producer is a pirate is not a confusion about source; you know who the source is, whether you think him a good guy or a bad guy."

confusion claims, this factor is properly analyzed by asking whether the junior user was careless, indifferent or otherwise culpable in selecting the mark, *Altira Group LLC*, 207 F. Supp. 2d at 1200; *Mars Musical Adventures, Inc.*, 159 F. Supp. 2d at 1152, or whether the junior user intended to push the senior user out of the market, *Freedom Card, Inc.*, 432 F.3d 463 at 478. Plaintiff neither discusses, nor points to evidence regarding, whether Defendants engaged in any of the conduct that suggests an intent to infringe on Plaintiff's trademark in a reverse confusion case. Accordingly, this factor weighs against the likelihood of confusion in this case.

### g.    Likelihood of Expansion

"[A] strong possibility that either party will expand [its] business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Homeowners Group, Inc. v. Home Marketing Specs., Inc.*, 931 F.2d 1100, 1112 (6th Cir. 1991). Here, there is no dispute that the Boom campaign ended in June 2011, and that Nike has no intention of using "boom" again. Accordingly, there is no evidence that Defendants will compete with Tovey using "boom" should he continue to develop his BOOM YO! product lines. Indeed, the evidence reveals that, rather than expanding its product lines, Nike has actually decreased them by no longer producing "boom" products. This factor weighs against the likelihood of confusion. *See AutoZone*, 373 F.3d at 793.[21]

---

[21] Plaintiff argues that this factor is irrelevant because the parties already use the marks on "identical goods." (Pl. Opp. at 40, Doc. No. 80.) He cites to *Barrios v. Am. Thermal Instruments, Inc.*, 712 F. Supp. 611, 619 (S.D. Ohio 1988), to support his argument. That case, however, is distinguishable from the present case. In *Barrios*, there was no evidence that the junior user had stopped using the infringing mark. Here,

h.      **Likelihood of Confusion - Conclusion**

Here, even with one factor – the strength of Plaintiff's mark – undecided, there is

no genuine issue of material fact regarding the likelihood of confusion in this case.  The

remaining relevant factors – whether the marks are confusingly similar; the relatedness

of the parties' goods; the parties' marketing channels; Defendants' intent; and the

likelihood of expansion – all strongly weigh in favor of finding no likelihood of confusion

in this case.  In considering "the touchstone question of 'whether relevant consumers

are likely to believe that the products or services offered by the parties are affiliated in

some way,'" *AutoZone, Inc.*, 373 F.3d at 801 (quoting *Homeowners*, 931 F.2d at 1107),

there is simply insufficient evidence to establish a genuine issue of material fact

regarding whether consumers are likely to be confused by Defendants' use of "boom,"

*id*. at 793 (summary judgment is appropriate where "there is not enough total evidence

for a jury to conclude that the junior mark is likely to confuse consumers").  Accordingly,

Defendants are also entitled to summary judgment on Tovey's federal infringement

claims – his second, fourth and thirteenth claims –  on the basis that there is no

genuine dispute of material fact regarding the likelihood of confusion in this case.

---

there is no dispute that Defendants permanently ended the "boom" campaign.
       Tovey also argues that "the scope of damages associated with Nike's past co-opting of the term is what is relevant, not the fact that Nike has ostensibly ended the campaign as of this time."  (Pl. Opp. at 40, Doc. No. 80.)  The issue of past confusion is relevant to the likelihood of confusion analysis, as evidence of actual confusion is a factor in the analysis.  However, the likelihood of confusion analysis also includes a factor that considers future behavior – asking whether the parties are likely to compete because of future expansion – reflecting that potential future behavior is part of the analysis.  Accordingly, the fact that Nike ended the "boom" campaign and does not intend to reuse it is relevant to determining whether there is a likelihood of confusion in this case.

C.    **State Law Claims**

In addition to his federal statutory claims, Plaintiff's complaint alleged Ohio

common law claims for trademark infringement (count eight) and unfair competition

(count seven), as well as a claim under Ohio's Deceptive Trade Practices Act (count

nine).  The Sixth Circuit has recognized that these state law claims "mirror the . . .

federal claim of trademark infringement by also requiring proof of likelihood of

confusion."  _Daddy's_, 109 F.3d at 288; _see ETW Corp._, 332 F.3d at 920 ("Because

trademark claims under Ohio law follow the same analysis as those under the Lanham

Act, our discussion of the federal trademark claims will therefore encompass the state

trademark claims as well.").  Accordingly, because there is no genuine issue of material

fact with respect to the likelihood of confusion in this case, Defendants are also entitled

to summary judgment on the seventh, eighth and ninth counts of his complaint.

Finally, Plaintiff's complaint alleges a claim for unjust enrichment (count twelve).

In order to prevail on a claim for unjust enrichment under Ohio law, a plaintiff must

prove that: "(1) a benefit has been conferred by a plaintiff upon a defendant; (2) the

defendant had knowledge of the benefit; and (3) the defendant retained the benefit

under circumstances where it would be unjust to do so without payment."  _Bldg. Indust._

_Consultants, Inc. v. 3M Parkway, Inc._, 911 N.E.2d 356, 361, 182 Ohio App.3d 39, 46

(Ohio App. Ct. 2009) (internal quotation marks and citation omitted).  Here, Defendants

argue that they are entitled to summary judgment on Plaintiff's unjust enrichment claim

because there is no evidence that Tovey conferred a benefit on Defendants.

Plaintiff does not address Defendants' arguments with respect to his unjust

enrichment claim.  Further, there is no evidence that creates a genuine issue of material fact regarding the first element of the claim.  The unrefuted evidence in the record establishes that Defendants originated and developed the Boom campaign independently of Tovey.  Indeed, Tovey admits that he has no evidence that anyone communicated his Boom Yo! idea to Nike.  Absent evidence demonstrating that Tovey conferred a benefit on Defendants, they are entitled to summary judgment on his claim for unjust enrichment.

### III.   Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Defendants' motion for summary judgment be GRANTED.

s/ *Nancy A. Vecchiarelli*
U.S. MAGISTRATE JUDGE


Date: May 1, 2014


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**